Docket No. 109184.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

_____

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHARLES E. CLENDENIN, Appellee.

*Opinion filed September 23, 2010.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

Following a bench trial in the circuit court of Kane County, defendant, Charles E. Clendenin, was convicted of unlawful possession of child pornography (720 ILCS 5/11–20.1(a)(6) (West 2002)). The appellate court reversed and remanded. 395 Ill. App. 3d 412. We granted the State's petition for leave to appeal. 210 Ill. 2d R. 315(a). For the reasons that follow, we reverse the judgment of the appellate court and remand this cause to that court for further proceedings consistent with this opinion.

BACKGROUND

On September 5, 2003, defendant was charged by information with unlawful possession of child pornography, in that he knowingly

possessed a video clip of a female child under the age of 18 years engaged in an act of sexual penetration (720 ILCS 5/11–20.1(a)(6) (West 2002)).

### A. Defendant's Motion to Quash and Suppress

Defendant filed a motion to quash his arrest and suppress evidence. He argued that his right to be free from unreasonable searches and seizures guaranteed under the fourth amendment to the United States Constitution (U.S. Const., amend. IV)[1] was violated when his girlfriend, Ellen Bailey, removed items from his home and gave them to police for further investigation, ultimately resulting in his arrest.

At the hearing on defendant's motion, Bailey testified that defendant lived next door to her in St. Charles, and they had a romantic relationship. The couple had exchanged keys to their residences with the understanding that each could enter when the other was not present. On August 29, 2003, Bailey entered defendant's home while he was on vacation to water his plants and to retrieve a vacuum cleaner she had previously left there. During her visit, Bailey saw four wires next to defendant's computer which had small camera lenses attached to the ends. She became concerned because defendant had recently purchased a webcam for her daughters, and questioned whether these cameras were somehow related to it. Her suspicions prompted her to look behind the computer, and she discovered a closed, zippered case which contained approximately 50 computer discs, some labeled with handwritten dates. Unsure whether there was a connection between what was recorded on the discs and the small cameras, Bailey took the case and the cameras back to her home. Upon playing a few of the discs in her computer, she discovered one with a list of titles that were "very disturbing," including " 'mother f***s 8-year-old.' " Bailey viewed one of the disc's image files, which depicted a "grown

---

[1]Defendant also makes citation to the search and seizure provisions of article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6), but does not contend that these provisions offer broader protection than the fourth amendment.

man having sex with a 13-year-old." Believing the disc to contain child pornography, Bailey kept it, along with the cameras. She returned the remainder of the discs and the case to defendant's home.

On September 1, 2003, Bailey met with Bruce Malkin, a commander with the West Chicago police department and a personal friend. Bailey recounted to Malkin the circumstances of her discovery of the cameras and computer discs, and told him that the images on the disc caused her great concern. She then gave the items to Malkin. Bailey was thereafter contacted by St. Charles police officer Andrew Lamela. Bailey provided Lamela with the same information that she had given to Malkin regarding the circumstances of her discovery of the disc and its contents.

Commander Malkin's testimony mirrored Bailey's regarding her discovery and viewing of the disc. Bailey told him that the disc contained "what she suspected to be child pornography." Malkin used his own computer to view the disc, which was marked with the handwritten date of "20 November 2," and discovered a video clip he believed to be child pornography.

The final witness was Detective Lamela, who spoke with Bailey on September 2, 2003, and received the same background information she had provided to Malkin. The next day, Lamela met with Malkin, who gave him the disc and cameras Bailey removed from defendant's residence. After viewing the disc, Lamela determined that it contained child pornography. He contacted the State's Attorney's office, which advised him that he had probable cause to arrest defendant. After Lamela took defendant into custody, defendant gave an oral statement, which Lamela summarized in a police report. Defendant thereafter provided a second statement, which Lamela recorded on audiotape and had transcribed. Defendant also consented to a police search of his home and computer media.

The circuit court denied defendant's motion to quash and suppress. Because Bailey was not acting as an agent of the police when she removed the disc and cameras from defendant's home, the court held that there was no state action involved in the police's acquisition of those items which implicated the fourth amendment. The court further held that the content of the disc provided police with probable cause to arrest defendant. Defendant filed a motion to reconsider, which the circuit court denied.

## B. Stipulated Bench Trial

During a September 2004 pretrial hearing, defense counsel informed the circuit court that defendant wished to "waive the right to a jury and present a stipulation to you and have you decide the defendant's guilt on the basis of our stipulated evidence."[2] Defense counsel also stated for the record that within the stipulation he was "renewing" his objection to the circuit court's denial of the suppression motion and "requesting the court to reconsider *** as if we were having all the witnesses come to court." The circuit court took the stipulation under advisement.

The court informed the parties on January 13, 2005, that it would not accept the stipulation as drafted.[3] The parties then submitted the following amended stipulation on March 16, 2005:

> "STIPULATION
>
> NOW COME the parties to this cause and hereby stipulate to the availability of the following evidence for purposes of proceeding with a bench trial of the charge of unlawful possession of child pornography alleged in the Complaint for Preliminary Hearing.
>
> The parties agree that the witnesses called at the hearing on the defense Motion to Quash Arrest and Suppress Evidence held on January 23, 2004 would provide the same testimony that was presented on that date, including the introduction of the same exhibits. The State moves for admission of photographs of the video clip referred to in the Complaint for Preliminary Hearing, marked People's Exhibits # 1 & 2. The photographs portray a portion of one of the video clips contained on the computer disk taken from [defendant's] apartment by Ellen Bailey on August 29, 2003 and delivered to the West Chicago Police by Ellen Bailey on September 1, 2003. [Defendant] objects to the introduction into evidence of People's Exhibits # 1 & 2 on the same

---

[2]The record on appeal contains defendant's signed waiver of trial by jury.

[3]A copy of this stipulation is not included in the record on appeal.

grounds presented at the hearing on the defense Motion to Quash Arrest and Suppress Evidence and the subsequent Motion to Reconsider. [Defendant] requests the Court to reconsider and reverse its previous rulings concerning the admissibility of this evidence.

If called as a witness, [Detective Lamela] would testify that he interviewed [defendant] on September 3, 2003 following his arrest in this case. After waiving his Miranda rights, [defendant] stated that he logs on to the internet to a website from which he downloads music and pornography. He typed [*sic*] in keywords for the pornography in the search engine and then downloads all the files to his hard drive. Later, he transfers the files to a disk and then views them. He does not know what he downloads until the file has been viewed. He admitted to possessing six disks containing pornography in his apartment. When asked if he knew how many video clips of child pornography were contained on the disks, he stated, 'Not very many.' He last downloaded pornography from the website on the preceding weekend. He stated that he did not have time to transfer those files to a disk and did not know what files were downloaded. [Defendant] identified the disk provided to the West Chicago Police Department by Ellen Bailey as belonging to him. [Defendant] denied manufacturing or distributing the child pornography video clips. The police seized seventy-seven (77) compact disks from [defendant's] residence, of which five (5) contained pornography, including adult pornography. The remainder of the disks contained music and information from [defendant's] employment.[4]

The introduction of the testimony of Detective Lamela would be subject to [defendant's] objection on the same grounds presented in the defense Motion to Quash Arrest and Suppress Evidence and the subsequent Motion to Reconsider. [Defendant] requests the Court to reconsider and reverse its

---

[4]The testimony of Detective Lamela referred to in the stipulation is contained in a police report written by Lamela, file stamped September 9, 2003, which is part of the record on appeal.

previous rulings concerning the admissibility of this evidence. [Defendant] objects to all evidence seized by the St. Charles Police Department from [defendant's] residence and to the statements made by [defendant] to the police because the evidence constitutes the illegal fruit of the unlawful search and seizure of the computer disk delivered to the police by Ellen Bailey.

[Defendant] does not stipulate to the sufficiency of the evidence to convict him of the offense charged."

Upon the tender of this document to the court, the following exchange occurred between defendant and the circuit judge:

"THE COURT: All right. And so Mr. Clendenin, you wish to be bound by the stipulation; is that correct?

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: All right. And I will review that along with the evidence and have a ruling for you then."

## C. Circuit Court Ruling

On April 27, 2005, the circuit court found defendant guilty of possession of child pornography. The court initially noted that the stipulation contained defendant's continued objection "to the admission of People's Exhibits 1 and 2 on the same grounds that were presented on the motion to quash arrest and suppress evidence." The court adhered to its prior ruling and again rejected defendant's arguments regarding the suppression issue.

The court then ruled that the State had proven the elements of the offense beyond a reasonable doubt. Defendant admitted that he possessed several discs containing pornography, and when asked how many contained child pornography, replied, "Not very many." Defendant's knowledge that the discs contained child pornography was further supported by the explicit titles of some of the images found on the disc. The court also held that an adult viewing People's Exhibits 1 and 2 "should reasonably know that the child depicted is under 18." Finally, the court found it "very clear" that the exhibits showed the child engaged in actual or simulated acts of sexual intercourse.

## D. Posttrial Proceedings

On May 2, 2005, defendant filed a posttrial motion requesting the circuit court vacate his conviction on two grounds: (1) it was error to deny his motion to quash and suppress; and (2) the evidence was insufficient to support the guilty finding. Shortly thereafter, defendant's counsel, Larry Wechter, moved to withdraw, stating he and defendant had "recently *** developed differences of opinion concerning the future defense of the case, which renders it unreasonably difficult *** to effectively represent defendant." On May 26, 2005, Wechter was allowed to withdraw, and Stephen Brundage entered his substitute appearance on defendant's behalf.

On August 4, 2005, defendant filed an amended posttrial motion, repeating the claims of error set forth in the original motion, and adding two new claims: (1) that the State committed discovery violations by untimely producing the audiotape of defendant's statement to Detective Lamela, and by providing a transcript of that interview which contained mistakes; and (2) that Wechter had provided ineffective assistance of counsel by advising defendant to proceed by stipulated bench trial and by failing to alert the court to the discovery violations. The circuit court denied the motion with respect to the suppression issue. However, it ordered an evidentiary hearing on the remaining claims.

Defendant testified that at the start of his representation by Wechter, he met with him once in his law office. Thereafter, they communicated by phone and in person at the courthouse before and/or after every court hearing. Wechter also regularly spoke with defendant's father, an attorney in Ohio. Wechter offered defendant four options: enter a guilty plea, request a jury trial, pursue a bench trial, or agree to a stipulated bench trial. Wechter recommended a stipulated bench trial, and although defendant stated that Wechter did not "thoroughly" explain this procedure, defendant understood that its purpose was to preserve the suppression issue for appeal. When Wechter told defendant that he planned to discuss his recommendation with defendant's father, defendant responded that "whatever my father agrees, whatever is okay."

Defendant was then questioned by the prosecutor regarding an exchange which occurred between defendant and the circuit judge during the March 16, 2005, hearing:

"Q. *** [D]id you tell the court that you wished to be

-7-

bound by the stipulation that Mr. Wechter had presented to the court?

A. If I remember correctly, it says, 'Yes, it is,' on that.

Q. So your answer is yes?

A. The phrase. It's not just a yes or no, if I remember correctly. I'm not sure.

Q. Is your memory vague?

A. Certain areas."

In a subsequent exchange with his own counsel, defendant testified that he had not seen either version of the stipulation before it was presented to the court, was unaware of its contents, and did not want to be bound by it.

Defendant also denied that he said "Not very many," when asked by Detective Lamela if he knew how many video clips of child pornography he had downloaded. Defendant testified that he was unaware of child pornography on the discs, and that the stipulation was supposed to include his claim of innocence. Defendant further stated that the transcript of his second interview with Lamela was inaccurate, and he repeatedly asked Wechter to obtain the tape so that they could compare it to the transcript. According to defendant, he wanted a contested trial in order to cross-examine witnesses.

Detective Lamela testified that after he took defendant into custody, he interviewed him twice. During the first interview, which was not taped, Lamela asked defendant if he knew how many clips of child pornography were included in the material he downloaded, and defendant responded, "Not very many." Lamela included this statement in his police report. Lamela then conducted a second interview, which was audiotaped. Because Lamela did not ask the exact same questions of defendant during the second interview, the statement "Not very many" does not appear in the transcript of the second interview. Lamela followed police department protocol by having an administrative assistant prepare a transcript of the tape. Lamela stated that Wechter had called him several times to hear the tape, but scheduling conflicts delayed their meeting.

Defendant's father, Charles Clendenin, Sr., testified that he was a lawyer and former prosecutor in Clairmont County, Ohio. He was in contact with Wechter during defendant's case, and, in a July 2004

phone call, Wechter suggested that defendant plead guilty. Clendenin disagreed, contending that defendant was innocent. Wechter then suggested proceeding by stipulation. Clendenin found this "ridiculous," even though he did not know what a stipulation was. Clendenin told Wechter that defendant would enter a stipulation only if the State "c[a]me to [its] senses that [defendant] was not guilty." Clendenin never saw the stipulation and was surprised to learn of its content after the trial.

Clendenin further testified that he had the audiotape of defendant's interview with Lamela transcribed by a certified court reporter. Comparing that transcript to the one provided by police, Clendenin found discrepancies, including that the statement "Not very many" did not appear. In addition, the police transcript states that in response to Lamela asking defendant how many of the images on the disc contain child pornography, defendant replied that there "[s]hould be very few," because "normally everything is labeled with twenty different keywords and *** several times they threw it in there." By contrast, the certified transcript contains the same exchange, except that it concludes with the statement that "sometimes they throw it in there." Wechter also testified. His trial strategy, as explained to defendant, was to suppress the disc removed from defendant's home by Bailey. Wechter believed that successful suppression of this evidence would lead to suppression of defendant's statements to police, leaving the State with virtually no evidence against defendant to support the charge. Wechter regularly communicated with defendant, either in person at the courthouse before and after every court hearing, or by telephone. Wechter also wrote defendant letters after each court appearance, describing in detail what had happened that day and what was expected to happen in the future.[5]

Wechter presented defendant with two options after the suppression motion was denied: (1) proceed by nonstipulated jury or bench trial; or (2) proceed by stipulated bench trial with the purpose of preserving the suppression issue for appeal. Wechter recommended

---

[5]Several of these letters were admitted into evidence and are part of the record.

the latter option, and explained the mechanics of this procedure to defendant. According to Wechter, defendant appeared to understand the trial strategy, and he asked no questions about it. Although defendant occasionally expressed hesitation about the stipulation, he ultimately wished to follow that course of action.

Wechter believed that he had offered to show defendant the stipulation, and may have shown it to him, but defendant "did not express much interest in looking at it." Wechter included in the stipulation the minimum factual basis he thought the State would accept, and omitted several details he believed would be harmful to the defense, including portions of defendant's statement to the police. Wechter also included facts that "left the door open to argument," including that "the evidence was not sufficient to convict [defendant] of the charge," as well as preserving the challenge to the ruling on the suppression motion. Wechter had reviewed the transcript of defendant's interview with Lamela, and listened to the audiotape a day or two prior to submitting the March 2005 stipulation to the court. He found only minor, immaterial discrepancies between the tape and the transcript.

On July 21, 2006, the circuit court issued a written decision denying the remainder of defendant's posttrial motion. First, the court found no discovery violation by the State, observing that prior to submitting the March 2005 stipulation, Wechter had listened to the tape and compared it to the transcript provided by police, finding only minor errors. In addition, the errors alleged between the two versions of the transcript were not material in relation to the elements of the offense. Second, the court held that defense counsel was not ineffective. The court found that Wechter kept defendant appropriately informed of the court proceedings and of his suggested trial strategy, and his advice to proceed with a stipulated bench trial to preserve the suppression issue was not error.

In addition, the court held that defendant's confrontation rights were not violated by the stipulated bench trial, noting he had agreed in open court to proceed by stipulation after consulting with Wechter. The circuit court was unpersuaded by defendant's posttrial testimony claiming he objected to the stipulation, finding it "vague" and observing that he had "no clear memory of key points and conversations." Further, the circuit court held that "this stipulated

-10-

bench trial was no[t] a plea of guilty requiring proper admonishments," as "the defense did not agree that the proof was sufficient to meet the State's burden of proof." Moreover, the circuit court doubted that the result would have been different had defendant not followed Wechter's advice, as "defendant's [posttrial] testimony lacks even an assertion that he wished to testify." Finally, the court held there was sufficient evidence to prove defendant guilty beyond a reasonable doubt.

### E. Appellate Court Opinion

Defendant raised several claims of error in the appellate court. The court rejected defendant's challenge to the circuit court's denial of his motion to quash arrest and suppress evidence, but found merit in his contention that his attorney provided ineffective assistance of counsel with regard to the entry of the stipulation. Finding it "tacit" in our precedent that "no stipulation (regardless of its tactical or strategical worth) may be validly accepted by the court unless the defendant is apprised of the specific content" (395 Ill. App. 3d at 439), the panel held that Wechter's performance was deficient because he did not validly waive defendant's right of confrontation due to his failure to inform defendant of the specific content of the stipulation. 395 Ill. App. 3d at 444, 447. Further, the court held that this deficiency prejudiced defendant. 395 Ill. App. 3d at 447. Accordingly, the court reversed and remanded.[6]

### ANALYSIS

The State contends that the appellate court erred in reversing defendant's conviction by holding that he was denied effective assistance of counsel because Wechter failed to apprise defendant of the specific content of the stipulation. Citing to *People v. Campbell*, 208 Ill. 2d 203 (2003), *People v. Phillips*, 217 Ill. 2d 270 (2005), and *People v. Rowell*, 229 Ill. 2d 82 (2008), the State argues that counsel may generally enter into a stipulation without a defendant's knowing consent–and also absent admonishment by the court–so long as the

---

[6]Due to its disposition, the appellate court did not address defendant's remaining contentions of error.

stipulation is part of a reasonable trial strategy and the defendant does not object. The State contends that both elements were satisfied here: the stipulation was part of counsel's reasonable trial strategy to preserve a defense by securing appellate review of the suppression issue, and defendant did not object to the stipulation; in fact, defendant explicitly agreed to it. Therefore, the State maintains that Wechter's performance cannot be deemed deficient.

Defendant does not quarrel with the State's primary argument that our prior decisions in *Campbell*, *Phillips* and *Rowell* establish that generally defense counsel may validly waive a defendant's confrontation right by entering into a stipulation without ensuring that defendant is aware of its content so long as the stipulation is part of a reasonable trial strategy and the defendant does not object. Further, defendant does not address the State's assertion that the appellate court departed from this precedent by requiring that in every case where a stipulation is entered, the record must clearly show that a defendant has been informed of the specific content of the stipulation in order for it to be valid. Instead, defendant contends that Wechter's performance was deficient because the stipulation was the functional equivalent of a guilty plea. Therefore, defendant maintains, the stipulation was not part of a reasonable trial strategy and defendant was entitled to admonishments and to decide whether to personally waive his right of confrontation. Defendant further contends that the record reflects that he objected to the stipulation. Defendant thus concludes that Wechter's performance was deficient and that the judgment of the appellate court should be affirmed. We disagree.

To establish ineffective assistance of trial counsel, a defendant must meet the familiar two-part standard of *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984). A defendant must first demonstrate that his counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Wiley*, 205 Ill. 2d 212, 230 (2001). In so doing, a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence. *People v. Barrow*, 133 Ill. 2d 226, 247 (1989).

-12-

Secondly, a defendant must demonstrate that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *Wiley*, 205 Ill. 2d at 230. Because a defendant must satisfy both prongs of this test, the failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; see *People v. Bannister*, 232 Ill. 2d 52, 80 (2008).

In *People v. Campbell*, 208 Ill. 2d 203 (2003), we addressed an issue of first impression: "whether defense counsel, by stipulating to the admission of evidence, can waive a defendant's constitutional right to confront the source of the evidence without the defendant's knowing consent to the stipulation." *Campbell*, 208 Ill. 2d at 205. Campbell argued that because the constitutional right of confrontation[7] belongs exclusively to the accused, a waiver of this right is valid only when it is personally and knowingly made by the defendant. *Campbell*, 208 Ill. 2d at 209-10. We disagreed.

We first observed in *Campbell* that our ruling in *People v. Ramey*, 152 Ill. 2d 41 (1992), established that only four decisions ultimately belong to a defendant after consultation with his attorney: (1) what plea to enter; (2) whether to waive a jury trial; (3) whether defendant will testify on his own behalf; and (4) whether to appeal. *Campbell*, 208 Ill. 2d at 210, citing *Ramey*, 152 Ill. 2d at 54. We further noted that, subsequent to *Ramey,* we held there is a fifth decision which belongs to a defendant. In *People v. Brocksmith*, 162 Ill. 2d 224 (1994), we established that a defendant has the exclusive right to decide whether to submit an instruction on a lesser-included offense at the conclusion of the evidence, finding this analogous to the decision of what plea to enter. *Campbell*, 208 Ill. 2d at 210, citing *Brocksmith*, 162 Ill. 2d at 229. We explained in *Campbell* that apart from these decisions, which are to be personally made by a defendant, trial counsel has the right to make the ultimate decision with respect

---

[7]This right is guaranteed under the sixth amendment to the United States Constitution (U.S. Const., amend. VI) and under article I, section 8, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §8), which provide: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***."

-13-

to matters of tactics and strategy after consulting with his client, including " 'what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike[,] *** what trial motions should be made[,] *** [and] the defense to be presented at trial.' " *Campbell*, 208 Ill. 2d at 210, quoting *Ramey*, 152 Ill. 2d at 54.

In holding that the waiver of the right to confrontation does not belong exclusively to a defendant, we aligned with the majority of federal and state courts which had already addressed this issue. *Campbell*, 208 Ill. 2d at 217. Relying upon those rulings as guidance, we held that defense counsel may generally waive a defendant's right of confrontation by entering into an evidentiary stipulation where two elements are met: (1) the defendant does not object; and (2) the decision to stipulate is a matter of trial tactics and strategy. *Campbell*, 208 Ill. 2d at 217. We carved a limited exception to this general rule, however, where a stipulation is the practical equivalent of a plea of guilty, holding that "defense counsel cannot stipulate to facts which establish the guilt of the accused because the constitutional right implicated in that situation is the right of a defendant in a criminal case to plead not guilty." *Campbell*, 208 Ill. 2d at 219. Based upon this rationale, we held that departure from the general rule that defense counsel may waive a defendant's right of confrontation is warranted *only* in those instances where: (1) the State's entire case is presented by stipulation and defendant fails to preserve a defense; or (2) the stipulation concedes the sufficiency of the evidence to support a conviction. *Campbell*, 208 Ill. 2d at 218. Because these specific circumstances effectively transform a stipulation into a plea of guilty, *Campbell* established that a defendant in such instances must be personally admonished about a stipulation and must personally agree to it. *Campbell*, 208 Ill. 2d at 218.

In *People v. Phillips*, 217 Ill. 2d 270, 288 (2005), we reaffirmed *Campbell*'s holding that apart from the five decisions that ultimately belong to a defendant in a criminal case, trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consultation with the client. *Phillips*, 217 Ill. 2d at 281, quoting *Campbell*, 208 Ill. 2d at 210. Accordingly, we also reaffirmed the general rule that defense counsel validly waives a defendant's confrontation right by agreeing to a stipulation as long as the stipulation is part of counsel's trial tactics and strategy, and the

defendant does not object. *Phillips*, 217 Ill. 2d at 283, quoting *Campbell*, 208 Ill. 2d at 217.

We made it clear in *Phillips*, however, that *Campbell* "attached no other restrictions to defense counsel's authority to stipulate to the admission of evidence," and, except in those limited cases where the stipulation is "tantamount to a guilty plea," *Campbell* "imposed no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record." *Phillips*, 217 Ill. 2d at 283. We repeated our holding in *Campbell* that a stipulation is considered tantamount to a guilty plea–and therefore requires defendant's admonishment and personal waiver–in only two specific circumstances: (1) the State presents its entire case by stipulation and the defendant does not preserve a defense; or (2) the stipulation states that the evidence is sufficient to convict the defendant. *Phillips*, 217 Ill. 2d at 283, quoting *Campbell*, 208 Ill. 2d at 218.

We recently revisited this issue in *People v. Rowell*, 229 Ill. 2d 82 (2008). We again reaffirmed *Campbell*'s general rule that defense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy. *Rowell*, 229 Ill. 2d at 102, quoting *Campbell*, 208 Ill. 2d at 217. We also reaffirmed that it is *only* when the stipulation is tantamount to a guilty plea that departure is made from this general rule and a defendant must receive admonishments and personally waive his right of confrontation. *Rowell*, 229 Ill. 2d at 102.

*Rowell* also provided the opportunity, however, for us to clarify what it means for a stipulation to be tantamount to a guilty plea. There, the defendant argued he was entitled to receive an admonishment and personally waive his confrontation right because the State's entire case against him was presented by stipulation. In rejecting the assertion that this alone rendered the stipulation equivalent to a plea of guilty, we repeated that a stipulation may be tantamount to a guilty plea in two instances: (1) when the State's entire case is to be presented by stipulation *and* the defendant does not present or preserve a defense; *or* (2) the stipulation includes a statement that the evidence is sufficient to convict the defendant. *Rowell*, 229 Ill. 2d at 102, quoting *Campbell*, 208 Ill. 2d at 218. Focusing on the first instance, we made it clear that the test is

-15-

conjunctive, requiring *both* elements to be present before admonishments and a personal waiver are required. Although the State's entire case in *Rowell* was presented by stipulation, the defendant also preserved a defense by arguing that the evidence was insufficient to support a conviction and that the charging instrument was deficient. *Rowell*, 229 Ill. 2d at 102, citing *People v. Rowell*, 375 Ill. App. 3d 421, 434 (2006). Because the defendant preserved a defense, the stipulation was not tantamount to a guilty plea,[8] and "*Campbell* did not require the trial court or counsel to admonish defendant and ensure that the stipulation was part of the record." *Rowell*, 229 Ill. 2d at 102.

In the instant appeal, defendant contends that because the stipulation was the functional equivalent of a guilty plea, the limited exception to the general rule set forth in *Campbell* was triggered, and he therefore should have received personal admonishments and personally agreed to its entry. We reject defendant's assertion, and hold that this case does not present the circumstance where the stipulation was tantamount to a guilty plea, which would remove it from the ambit of the *Campbell* general rule. As we have repeatedly held, a stipulation is tantamount to a guilty plea–and therefore requires a defendant's personal admonishment and agreement–in *only* two instances: (1) the State's entire case is to be presented by stipulation *and* the defendant does not present or preserve a defense; *or* (2) the stipulation includes a statement that the evidence is sufficient to convict the defendant. *Rowell*, 229 Ill. 2d at 102; *Phillips*, 217 Ill. 2d at 283; *Campbell*, 208 Ill. 2d at 218.

Applying this rule to the instant appeal, it is clear that neither instance is met. Although the State's entire case was presented by stipulation, defense counsel adequately preserved a defense by preserving the suppression issue for appellate review. The stipulation twice objected to evidence and testimony "on the same grounds presented" in the earlier suppression motion, twice requested the circuit court to reverse its denial of the suppression motion, and

---

[8]The second instance under which a stipulation may be considered tantamount to a guilty plea, *i.e.* that the stipulation includes a statement that the evidence is sufficient to convict the defendant, was not at issue.

-16-

objected to all evidence seized from defendant's home and his statements to police "as the illegal fruit of the unlawful search and seizure of the computer disk delivered to the police by Ellen Bailey." Moreover, the stipulation explicitly stated that it did not concede the sufficiency of the evidence to support a conviction. Accordingly, the stipulation was not tantamount to a guilty plea requiring that defendant receive personal admonishments and that he agree to its entry.

Nevertheless, the appellate court determined that the stipulation was invalid pursuant to its holding that in *all* instances where a defendant enters into a stipulation–whether it is functionally equivalent to a guilty plea or not–the record must clearly show that the defendant was apprised of its specific content. 395 Ill. App. 3d at 444. Applying this rule, the appellate court held that Wechter's performance was deficient because the record failed to show that defendant was advised of the specific content of the stipulation, reasoning that defendant's "ignorance" of the stipulation's content violated his confrontation right because he could not meaningfully object. 395 Ill. App. 3d at 437. We observe, however, that in the course of its opinion, the appellate court readily acknowledged that our decisions in *Campbell* and *Phillips* "stresse[d]" that where a stipulation "is a matter of sound trial tactics or strategy, a defendant need not be advised about the procedural ramifications of stipulations in general or about the consequences of a proposed stipulation for that particular case" (395 Ill. App. 3d at 438-39), noted that neither *Campbell* nor *Phillips* "expressly" held that a court may not validly accept a stipulation unless the defendant is apprised of its content (395 Ill. App. 3d at 439), and admitted that *Phillips* established that counsel and the circuit court need not admonish the defendant of the implications and consequences of a stipulation (395 Ill. App. 3d at 441). We therefore question how the appellate court–in light of the above-referenced passages–could nevertheless conclude that it is "implicit" in *Phillips* and *Campbell* that a defendant must "be informed of the specific content of the stipulation" in every instance. 395 Ill. App. 3d at 442. The appellate court departed from the holdings in our prior opinions that foreclosed the reasoning it adopted.

Contrary to the belief of the appellate court, *Campbell* did not

impliedly adopt a rule requiring counsel to inform a defendant of the specific content of evidentiary stipulations in all circumstances. We repeat that *Campbell* sets forth the general rule that defense counsel may validly waive a defendant's right of confrontation where two elements are met: (1) the defendant does not object to the stipulation; *and* (2) the decision to stipulate is a matter of trial tactics and strategy. *Campbell*, 208 Ill. 2d at 217; see also *Rowell*, 229 Ill. 2d at 102; *Phillips*, 217 Ill. 2d at 283.

We further repeat that *Campbell* carved out a limited exception to this general rule in only those instances where the stipulation is the functional equivalent of a guilty plea, on the basis that "counsel cannot stipulate to facts which establish the guilt of the accused" (*Campbell*, 208 Ill. 2d at 219) because such actions implicate a separate and distinct constitutional right that belongs exclusively to a defendant: the right to plead not guilty. *Campbell*, 208 Ill. 2d at 219. *Campbell* and its progeny establish that a stipulation is tantamount to a guilty plea when one of two conditions is met: (1) the State presents its entire case by stipulation *and* defendant fails to preserve a defense; *or* (2) the stipulation concedes that the evidence is sufficient to support a guilty verdict. *Campbell*, 208 Ill. 2d at 218; see also *Rowell*, 229 Ill. 2d at 102; *Phillips*, 217 Ill. 2d at 283. We also repeat our holding in *Phillips* that except in those specified instances where the stipulation is tantamount to a guilty plea, *Campbell* "attached no other restrictions to defense counsel's authority to stipulate to the admission of evidence," and "we imposed no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record." *Phillips*, 217 Ill. 2d at 283.

Applying the rule we first developed in *Campbell*–and reaffirmed in *Phillips* and *Rowell*– to the instant appeal, it is clear that Wechter validly waived defendant's confrontation right by entering into the stipulation: defendant did not object to its entry and the decision to stipulate was a matter of trial tactics and strategy.

First, the record clearly establishes that defendant did not object to the stipulation. As noted earlier, defendant was present in open court when the stipulation was presented, and the court asked defendant directly if he wished to be bound by the stipulation. Defendant responded in the affirmative. We note that despite defendant's response being a clear and unequivocal statement of

agreement, defendant now contends that the record shows he "obviously objected" to the entry of the stipulation. Defendant's efforts to disavow his agreement are unavailing. In fact, although *Campbell* "impose[s] no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record" (*Phillips*, 217 Ill. 2d at 283), defendant nevertheless received the benefit of the circuit court inquiring if he agreed to the stipulation. At no time did defendant express disapproval, concern or confusion when the stipulation was discussed during the court proceedings. Accordingly, we conclude that defendant did not object to the entry of the stipulation.

In addition, we hold that the decision to proceed by stipulation was a matter of trial tactics and strategy. From the outset of this case, Wechter believed that the best strategy was to suppress the disc removed from defendant's home by Bailey. If successful, this would, in Wechter's view, also lead to the suppression of defendant's statements to Lamela, leaving the State with little–if any–evidence to support the charge. To this end, the parties immediately litigated the suppression issue. During that hearing, defendant had the opportunity to confront the same witnesses who would likely be the main witnesses at defendant's trial. Although defendant did not prevail on the motion, Wechter preserved the suppression issue at every juncture in the case.

After filing an unsuccessful motion to reconsider, Wechter included the suppression issue in the stipulation, and made numerous, specific objections to the introduction of evidence from the computer disc taken from defendant's home by Bailey, to the testimony of Detective Lamela, to the evidence seized from defendant's residence and computer, and to the statements defendant made to police. Wechter also preserved the suppression issue in the posttrial motion. In addition, Wechter also stated that while preserving the suppression issue for appeal, his strategy was also to craft the stipulation in such a way as to keep as much incriminating evidence out of it as possible. The record therefore supports Wechter's claim that the stipulation was part of the defense strategy he pursued throughout the proceedings.

The record also reveals that, contrary to defendant's assertion that he and Wechter had "limited consultations," Wechter regularly

consulted with defendant about this strategy, communicating with him over the phone, in person at the courthouse, and by written correspondence. In a letter dated September 2, 2004, sent to defendant prior to the presentation of the original stipulation, Wechter provided three pages of detailed explanation, outlining the option of preserving the suppression issue by proceeding by stipulation, and discussing the likelihood of success. One would reasonably believe that defendant, a college-educated professional, would read this correspondence and pose questions, if necessary. Based upon defendant's testimony at the posttrial hearing, however, it appears that he was relatively uninterested and disengaged in the process, repeatedly stating that he would agree to whatever his father decided.

Thus, because both prongs of the general rule set forth in *Campbell* were met, Wechter validly waived defendant's right of confrontation by entering into the stipulation. Accordingly, Wechter's actions in this regard were not deficient, and the first prong of the *Strickland* ineffectiveness inquiry has not been satisfied. Because both prongs of the *Strickland* two-part test must be satisfied to establish an ineffective assistance of counsel claim, failure to establish deficient performance is fatal to defendant's claim. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; see also *Bannister*, 232 Ill. 2d at 80.

As an alternative basis for reversing his conviction, defendant contends that the appellate court erred in holding that the circuit court correctly denied his motion to quash arrest and suppress evidence.[9]

---

[9] Rule 318(a) (155 Ill. 2d R. 318(a)) provides that in all appeals "any appellee, respondent, or coparty may seek and obtain any relief warranted by the record on appeal without having filed a separate petition for leave to appeal or notice or cross-appeal or separate appeal." See also *Poindexter v. State of Illinois*, 229 Ill. 2d 194, 205 n.4 (2008) ("This court has invoked Rule 318(a) in finding that allowance of one party's petition for leave to appeal brings before this court the other party's requests for cross-relief.") We note, however, that the cover of defendant's brief did not request cross-relief. Rule 315(h) provides: "If the brief of the appellee contains arguments in support of cross-relief, the cover of the brief shall be captioned: 'Brief of Appellee. Cross-Relief Requested.' " 210 Ill. 2d R. 315(h).

Although defendant acknowledges that the fourth amendment protection against unreasonable searches and seizures does not generally apply to private individuals, he contends that the police violated this guarantee because their search of the disc given to them by Bailey exceeded the scope of the private search which she conducted. The State counters that the police search remained within the scope of the initial private search and, therefore, pursuant to this court's decision in *People v. Phillips*, 215 Ill. 2d 554 (2005), the appellate court's holding should be upheld. We agree with the State.

A circuit court's ruling on a motion to suppress is reviewed under the two-part test adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The circuit court's factual findings may be rejected only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). The reviewing court then assesses the established facts in relation to the issues presented and may draw its own conclusions in deciding what relief, if any, should be granted. *Harris*, 228 Ill. 2d at 230. Accordingly, this court reviews *de novo* the ultimate legal question of whether suppression is warranted. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006).

In *Phillips*, the defendant took his computer to have it repaired. After making the repairs, the technician tested the computer by playing a video clip stored on its hard drive. The video clip depicted what appeared to be a young girl engaged in a sexual act. The technician immediately contacted a police officer acquaintance, told him what he had seen, and asked him to come to the shop. When the officer arrived, he had the technician play the video clip without first seeking a warrant. The officer agreed that the video depicted child pornography and informed other officers who also came to the shop and viewed the video. *Phillips*, 215 Ill. 2d at 559. The defendant was thereafter arrested and provided a voluntary statement admitting that he possessed child pornography. *Phillips*, 215 Ill. 2d at 560.

The circuit court denied defendant's motion to quash arrest and suppress evidence, holding that the fourth amendment did not apply to the technician's initial search of the computer, as it was the act of a private citizen, not of an agent of law enforcement. *Phillips*, 215 Ill. 2d at 560-61. The court further found that the police viewed the same

-21-

video as the technician, and, by doing so, they acquired probable cause to arrest the defendant. *Phillips*, 215 Ill. 2d at 561.

We affirmed. Relying upon *United States v. Jacobsen*, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1656 (1984), we noted that "the fourth amendment applies only to government action" and, therefore, "[a] search by a private person does not violate the fourth amendment." *Phillips*, 215 Ill. 2d at 566. We further held that the fourth amendment does not prohibit the government from using information discovered by a private search, because "the private search has already frustrated any expectation that the information will remain private." *Phillips*, 215 Ill. 2d at 566. Therefore, we explained that where the government uses privately discovered information to investigate a crime without first obtaining a warrant, "the fourth amendment question is whether the investigation 'exceeded the scope of the private search.' " *Phillips*, 215 Ill. 2d at 566-67, quoting *Jacobsen*, 466 U.S. at 115, 80 L. Ed. 2d at 95, 104 S. Ct. at 1657.

The defendant in *Phillips* argued that the police exceeded the scope of the initial private search by the computer technician because the technician did not provide the police with a "particular description" of the contents of the file that he had viewed. In rejecting this argument, we held that the technician's statement to the first officer at the scene that the video appeared to be child pornography provided a sufficient description of the file's contents. Therefore, when the officers viewed that file, they "gained no new material information," but "merely confirmed [the technician's] report that it appeared to be child pornography." *Phillips*, 215 Ill. 2d at 567. Thus, "learning with more precision what the video depicted" did not expand the police investigation beyond the scope of the technician's search. *Phillips*, 215 Ill. 2d at 567.

Here, defendant concedes that there is no fourth amendment issue with regard to Bailey, who acted in her private capacity when she took defendant's computer disc into her own home. There, she viewed the titles of the files on the disc and watched one video clip in which a minor girl appeared to engage in sexual activity with an adult man. This discovery caused Bailey to contact Malkin, who in turn, contacted Lamela.

Defendant contends that Malkin and Lamela, however, impermissibly exceeded the scope of Bailey's private search.

-22-

According to defendant, the incriminating nature of the disc was not readily apparent to Malkin or Lamela, as it was not marked as containing child pornography. In addition, defendant claims that the testimony of Malkin and Lamela does not indicate that their searches were limited to the same areas of the disc that Bailey had searched. Although the officers both claimed to have viewed a video file from the disc, the testimony did not establish that they viewed the same file Bailey viewed. We reject defendant's arguments.

Bailey testified that in addition to viewing a video file containing apparent child pornography, she also searched the disc widely enough to discover several file names she found "disturbing" and suggestive of child pornography, such as " 'mother f***s 8-year-old.' " Thus, Bailey's own search was of sufficient scope to allow police to perform a general review of the files on the disc for the presence of child pornography. Defendant has pointed to nothing in support of the claim that Malkin and Lamela searched anywhere on the disc that by its file name likely would not contain child pornography. Although defendant contends that the disc "could have contained vast amounts of personal information" belonging to him, he fails to point to any evidence in the record supporting this assertion.

In sum, Bailey's seizure and viewing of the disc were not state action implicating the fourth amendment. When Bailey presented the disc to Malkin and Lamela, she had already frustrated defendant's expectation of privacy. *Phillips*, 215 Ill. 2d at 566. There is no evidence to support defendant's contention that the scope of the investigation of the disc by Malkin and Lamela exceeded Bailey's prior, private search; it merely confirmed the results of the private search. Therefore, we conclude that the circuit court properly denied defendant's motion to quash and suppress.

C. Defendant's Remaining Claims of Error

In his brief, defendant also raises the following claims of error which the appellate court declined to address in its opinion: (1) the State committed a discovery violation by failing to timely produce the audiotape of Detective Lamela's interview of defendant; (2) defense counsel was ineffective in failing to challenge the State's late production of the audiotape; (3) counsel was also ineffective because

he incorrectly advised defendant regarding the period of sex offender registration; and (4) the evidence was insufficient to sustain defendant's conviction. Because the appellate court declined to reach the remainder of the issues raised in defendant's brief, we remand this cause to the appellate court to dispose of those claims raised before that court, but not previously ruled upon. *People v. Lowery*, 178 Ill. 2d 462, 473 (1997) (it is appropriate to remand an issue raised but not decided in the appellate court).

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court. We remand this cause to the appellate court for resolution of the remaining issues.

*Appellate court judgment reversed;*
*cause remanded.*