**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210131-U

Order filed February 15, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0131 Circuit No. 02-CF-27 |
| | ) | |
| BARNEY WILLIS, | ) ) | Honorable Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Peterson and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The circuit court properly dismissed defendant's postconviction petition at the first stage.

¶ 2    Defendant, Barney Willis, appeals from the first-stage dismissal of his postconviction petition. Defendant argues that his petition made an arguable showing that appellate counsel provided ineffective assistance for failing to challenge the Peoria County circuit court's ruling on his motion to suppress. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        A grand jury indicted defendant with aggravated battery of a child (720 ILCS 5/12-4.3(a)

(West 2002)). The indictment alleged that "[defendant,] a person over the age of 18 years

knowingly caused great bodily harm to [A.W.,] a child under the age of 13 years *** in that he

repeatedly pushed [A.W.'s] body against the mattress of her crib causing brain damage."

Defendant retained private counsel.

¶ 5        Defendant filed a motion to suppress the videotaped statement he made to police arguing

that he did not have a lawyer present; he was interrogated at length at a time when he was

physically and emotionally exhausted; the police made misleading promises to him; the police

bullied and coached him; he made several statements but the police only recorded the incriminating

statement; and unless the totality of the interrogation could be shown, which included the police

tactics and his original answers, the recording was misleading and prejudicial.

¶ 6        At the hearing on the motion, Detective Michael Eddlemon testified that he responded to

the hospital where other detectives informed him of an infant—A.W.—admitted to the intensive

care unit with a subdural hematoma. Eddlemon spoke with A.W.'s parents, Gale Hoskins and

defendant. Eddlemon asked to interview defendant at the Peoria Police Department. Defendant

agreed. The interview began at 10:55 p.m. Eddlemon informed defendant of his *Miranda* rights.

Defendant said he understood his rights and wanted to speak with the detectives.

¶ 7        Eddlemon asked defendant what happened to A.W. Defendant told Eddlemon

approximately five different stories concerning what happened to A.W., and none were consistent

with A.W.'s injuries. Eddlemon took a 15-minute break from interviewing defendant. Eddlemon

resumed the interview, advised defendant his *Miranda* warnings were still in effect, and asked

defendant if he still agreed to speak with him. Defendant agreed. Defendant told Eddlemon another

version regarding what happened to A.W. Eddlemon informed defendant that he did not have to continue speaking with him. Eddlemon asked defendant to tell him the truth. Defendant told Eddlemon a final version of events which was more consistent with A.W.'s injuries than the prior versions.

¶ 8 Defendant agreed to provide a videotaped statement and signed an authorization for recording form and a video *Miranda* waiver. Eddlemon testified that he did not threaten, coach, bully, nor promise defendant anything for his recorded statement. Eddlemon also observed that defendant responded appropriately to the questions asked. The State played defendant's videotaped statement.

¶ 9 In the video, defendant acknowledges that he is being recorded. Defendant states that he understands his *Miranda* rights and then waives those rights. Defendant states that no officer physically harmed him nor promised him immunity for his statement. Defendant admits that he was able to use the bathroom, eat, and drink throughout the duration of the interview. Defendant states he can read and write. Defendant states his name, date of birth, address, and telephone number.

¶ 10 Eddlemon asks defendant to tell him what happened to A.W. Defendant states that his mother-in-law picked up A.W. earlier that day and they returned at approximately 3:30 p.m. At approximately 4 p.m., defendant placed A.W. in her crib. Defendant said he played "too rough" with A.W. by "bouncing" her "like a basketball" in the crib. Defendant "bounc[ed]" A.W. approximately four to five inches off the mattress. A.W. started crying so defendant stopped. A.W. began making a bicycle motion or a running motion. A.W. started twitching. Defendant says he did not take A.W. to the doctor because he was scared. A.W. stopped twitching at approximately

3

7 p.m. A.W. started twitching again at approximately 12 or 1 a.m. Defendant took A.W. to the doctor.

¶ 11        Defendant states he "screwed up" and "hurt [A.W.]" Defendant admits his previous stories were lies because he was scared. Defendant apologizes for his actions, states he did not know what came over him, and he would never hurt A.W.

¶ 12        On cross-examination, Eddlemon testified that Detective Matthew Ray observed the interrogation. The interrogation ended at approximately 2:24 a.m. the following morning. The interrogation was 3½ hours long. Eddlemon only recorded defendant's statement because that was department protocol. Eddlemon did not suggest answers to defendant or offer defendant a deal for his statement.

¶ 13        Ray testified that he observed defendant's interrogation. Eddlemon did not offer defendant a deal or any form of leniency for his statement or suggest answers to defendant. Ray did not find defendant's early versions regarding A.W.'s injuries credible because they did not account for the lack of external injury.

¶ 14        Defendant testified that he dropped out of high school his senior year. Defendant worked at a fast food restaurant. He was awake approximately 40 hours prior to his interrogation because he did not sleep the night before. During the interrogation, defendant was worried about A.W. and eager to return to the hospital. Defendant initially lied to the officers because he thought they would leave him alone. Defendant fabricated the story about bouncing A.W. on the bed. Defendant did not bounce A.W. on the bed. Eddlemon offered defendant a deal for his confession. Eddlemon said he would speak with the state's attorney handling the case. Eddlemon offered probation, anger management, and parenting classes. Defendant said that Eddlemon coached him through the videotaped statement. Ray left the interrogation room before Eddlemon offered defendant a deal.

4

¶ 15    On cross-examination, defendant testified he did not consider the fabricated stories lies because he was concerned about A.W. and was willing to do anything to return to her. Defendant testified that he never hurt A.W. Defendant also testified that he lied to the police.

¶ 16    In its ruling, the court found the State's witnesses credible and defendant incredible. The court found that no promises, threats, coercion, or force were used to obtain defendant's statement. The court found that defendant was fully advised of his *Miranda* rights, understood those rights, and waived those rights. The court denied defendant's motion to suppress.

¶ 17    The matter proceeded to a bench trial. At the conclusion of the trial, the court found defendant guilty of aggravated battery of a child. The presentence investigation report indicated that defendant was 34 years old and had no prior convictions. The court sentenced defendant to 28 years' imprisonment. On direct appeal, defendant argued that the State failed to prove that he acted knowingly and that the circuit court abused its discretion in sentencing him. We affirmed defendant's conviction and sentence. *People v. Willis*, No. 3-04-0194 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 18    Defendant, as a self-represented litigant, filed a postconviction petition wherein he argued appellate counsel provided ineffective assistance for failing to challenge the denial of his motion to suppress his videotaped statement. The court summarily dismissed defendant's petition. Defendant appeals.

¶ 19                                    II. ANALYSIS

¶ 20    Defendant argues that the court erred in summarily dismissing his postconviction petition because his petition raised an arguable claim of ineffective assistance of appellate counsel for failing to challenge the court's denial of his motion to suppress his videotaped statement on direct appeal.

5

¶ 21　　　　The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) sets out a three-stage proceeding in which a criminal defendant may assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, the court must accept as true and liberally construe all the allegations in the petition unless contradicted by the record. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A defendant need only allege sufficient facts to state the "gist" of a constitutional claim for his petition to be forwarded to the second stage. *Hodges*, 234 Ill. 2d at 9. The circuit court may summarily dismiss a first-stage petition as frivolous or patently without merit where it has no arguable basis in law or fact. *Id.* at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* The dismissal of a postconviction petition is reviewed *de novo*. *Id.* at 9.

¶ 22　　　　"Petitioner's claim of ineffective assistance of counsel is reviewed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Brown*, 236 Ill. 2d 175, 185 (2010). "A postconviction petition alleging ineffective assistance of counsel may not be dismissed at the first stage of the proceedings if: (1) counsel's performance arguably fell below an objective standard of reasonableness; and (2) the petitioner was arguably prejudiced as a result." *Id.* "Normally, appellate counsel's choices concerning which issues to pursue are entitled to substantial deference." *People v. Johnson*, 205 Ill. 2d 381, 406 (2002). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Defendant

6

suffered no prejudice if the underlying issue lacks merit. *Johnson*, 205 Ill. 2d at 406. "[F]ailure to establish either prong is fatal to the claim." *People v. Clendenin*, 238 Ill. 2d 302, 318 (2010).

¶ 23   Defendant's first-stage petition failed because he cannot make an arguable showing of prejudice because a challenge to the motion to suppress ruling would have been meritless. In reviewing a circuit court's ruling on a motion to suppress, we substantially defer to the circuit court's factual findings and credibility determinations, and we reverse only if those findings are against the manifest weight of the evidence. *In re G.O.*, 191 Ill. 2d 37, 50 (2000). However, we review *de novo* whether the confession was voluntary. *Id.*

¶ 24   The circuit court found Eddlemon's and Ray's testimony credible and defendant's testimony unreliable. This testimony established that defendant was provided with the *Miranda* warnings before submitting to the videotaped interview and that the police made no promises, threats, or coercion to procure defendant's consent to the videotaped statement. We defer to these evidence-based findings since a contrary finding is not patently obvious. *People v. Relwani*, 2019 IL 123385, ¶ 18 ("A finding is against the manifest weight of the evidence only if 'the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)).

¶ 25   Next, we must determine whether these facts establish that defendant's videotaped statement was voluntarily given. Whether a statement is voluntarily given depends on the totality of the circumstances. *G.O.*, 191 Ill. 2d at 54. "The test of voluntariness is whether [defendant] 'made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether [defendant's] will was overcome at the time he or she confessed.' " *Id.* (quoting *People v. Gilliam*, 172 Ill. 2d 484, 500 (1996)). "Factors to consider include [defendant's] age, intelligence, background, experience, mental capacity, education, and physical condition at the

time of questioning; the legality and duration of the detention; the presence of *Miranda* warnings; the duration of the questioning; and any physical or mental abuse by police, including the existence of threats or promises." *People v. Richardson*, 234 Ill. 2d 233, 253-54 (2009).

¶ 26       We begin by noting the following factors weigh against a finding of voluntariness. Defendant had little to no prior experience with the criminal justice system, he was suffering from sleep deprivation at the time of the interrogation, and he was in a distraught emotional state. However, the circuit court did not find defendant credible, so we provide little weight to defendant's testimony that he suffered sleep deprivation and a weakened emotional state.

¶ 27       Defendant argues that the duration of the interrogation weighs against admission. However, defendant's interrogation was only approximately 3½ hours long; police gave him a 15-minute break; and defendant admitted that he was allowed to use the bathroom, eat, and drink throughout the duration of the interview. See *People v. Terrell*, 132 Ill. 2d 178, 199 (1989). Accordingly, we find that this factor neither weighs for nor against a finding of voluntariness.

¶ 28       Defendant next argues that his intelligence, education, and background also weigh against admission. However, intelligence in this context means the ability to understand the words used in the *Miranda* warnings. *People v. Matute*, 2020 IL App (2d) 170786, ¶ 42. From our review, the record establishes that defendant had the intelligence, education, and background to comprehend the *Miranda* warnings and with this information, he made several *Miranda* waivers during the interview.

¶ 29       The following factors further favor finding defendant's statement to be voluntary: defendant was an adult at the time of the interrogation; defendant freely agreed to be interrogated and never requested counsel; *Miranda* warnings were given at numerous stages; defendant consistently waived and understood his *Miranda* rights; and there was no evidence of any

promises, threats, coercion, or force used to obtain defendant's confession. Based on the totality of this evidence, defendant's confession was voluntary. Accordingly, appellate counsel did not arguably provide ineffective assistance because defendant cannot show that he suffered prejudice as a result of appellate counsel's failure to raise a meritless challenge to the court's ruling on his motion to suppress. See *Clendenin*, 238 Ill. 2d at 318.

¶ 30                                   III. CONCLUSION

¶ 31        The judgment of the circuit court of Peoria County is affirmed.

¶ 32        Affirmed.