2022 IL App (1st) 190911-U

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIFTH DIVISION
September 2, 2022

No. 1-19-0911

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 CR 6455 |
| | ) | |
| DAVID BIVENS, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

---

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

*Held*: We affirm defendant's convictions because the evidence was sufficient to sustain the verdict, the circuit court did not erroneously admit certain evidence, the prosecutor did not commit reversible misconduct during closing arguments, and defendant cannot establish prejudice for his ineffective assistance of counsel claim.

¶ 1    After a jury trial, defendant David Bivens was found guilty of robbery (720 ILCS 5/18-1(a) (West 2016)) and aggravated battery on a public way (720 ILCS 5/12-3.05(c) (West 2016)), and sentenced to concurrent sentences of nine and five years' imprisonment, respectively. He

appeals, arguing the evidence was insufficient to sustain the verdict, the circuit court erroneously admitted repetitious prior consistent statements of identification, the prosecutor committed misconduct during closing arguments, and his counsel was ineffective. We affirm.

¶ 2                                        BACKGROUND

¶ 3      Defendant and O'Hara Harris were charged by indictment with the robbery (720 ILCS 5/18-1(a) (West 2016)) and aggravated battery on a public way (720 ILCS 5/12-3.05(c) (West 2016)) of the victim Sedrick Wells.[1]

¶ 4      At trial, defense counsel represented in his opening statement that defendant had "no idea what happened to [Wells] on April 8, 2017, because he wasn't there." Counsel also stated defendant "doesn't have to put on a witness. He doesn't have to show evidence. He doesn't even have to testify. Yesterday you all agreed that if [defendant] doesn't testify, you won't hold it against him."

¶ 5      Wells testified that on April 7, 2017, at 10 a.m., he went to Geno's Goat Club in Chicago Heights, Illinois, to play slot machines, and stayed until Geno's closed early the next morning. He only left between 11:30 a.m. and noon for a haircut. Wells consumed approximately "five to six" beers while at Geno's. He saw defendant in Geno's that day as well, and identified him in court. They had known each for 10 to 15 years before April 7, 2017. Harris, who Wells had also known for years, was also in Geno's that day. When Wells left Geno's, he had $450 in his pocket. Harris stood behind Wells when he cashed out his ticket from the slot machine.

¶ 6      As defendant was "going out [of] the door" to exit Geno's, Harris asked to borrow his phone. Wells agreed, but when he handed over the phone, Harris walked away quickly. Wells followed, and saw Harris and defendant speaking in front of an apartment building. Harris then

_____

[1] Harris is not a party to this appeal.

ran "down the gangway towards the alley." Wells pursued him to an area he described as in, "the grass back there in the yard towards the alley," but in the process, defendant "came [from] behind" and struck Wells. Harris and defendant then threw Wells to the ground, and defendant removed the $450 from Wells' pocket while Harris choked and struck Wells. Defendant and Harris ran away. The street had sufficient lighting that Wells could see both defendant and Harris, and nothing obscured his view. Wells sustained back pain and soreness to his throat and face.

¶ 7    Wells returned to Geno's and told Barbara, a staff member, about the incident. Barbara drove him to the police station, where he identified defendant and Harris by name to an officer. On April 11, 2017, Wells returned to the police station, where he identified defendant and Harris in photographs to a detective.

¶ 8    Asked for clarification regarding the attack's location, Wells explained that Harris "ran through the gangway by the alley in the little yard back there. That's why I ran back there and followed him." This location was, "[a] few feet" from the alley.

¶ 9    On cross-examination, Wells testified that he drinks beer regularly. The incident occurred at approximately 1 a.m. on April 8, 2017. Harris and Wells were outside when Harris asked to borrow the phone. Wells responded to the question, "And then from behind you're saying [defendant] hit you?" by stating, "He came from like the side and then [Harris] hit me."

¶ 10    Wells denied that he told the police on April 8 that Harris first took his phone in the alley. He further denied that he said both defendant and Harris asked for the phone, defendant and Harris took only $300, or that he was only punched once and could not identify whether it was defendant or Harris that punched him. Regarding his conversation with the detective on April 11, Wells denied that he said he gave Harris the phone inside of Geno's or the attack occurred in the alley directly behind Geno's, but admitted he did not relay that Harris choked him.

3

¶ 11    On redirect, the following exchange occurred:

Q: *** [Y]ou told [the police] that O'Hara Harris and this defendant *** robbed you, right?

A: Yes.

Q: You told them when you went to the police station on April 8, correct?

A: That was my reason for going up there to report them.

Q: You then also spoke to the detective later on and you not only told the detective that [defendant] and O'Hara Harris robbed you, correct?

A: Yes.

Q: You also pointed them out in pictures and said that these are the people that robbed me on April 8; is that correct?

A: Right.

***

Q: You told the police on the second time you spoke to them on April 11 that O'Hara Harris and [defendant] robbed you, correct?

A: Yes.

Q: And you also pointed them both out in pictures, correct?

A: Right.

DEFENSE COUNSEL: Your Honor, I would object as to the truth of the matter of those statements.

THE COURT: We went through the identification on direct examination so that's been asked and answered.

¶ 12    Wells further testified on redirect that he told the officer on April 8 that defendant punched him and Harris joined in the attack, and responded to the question "Which is what you're saying today?" with "Exactly."

¶ 13    Chicago Heights police officer Hugh McCorkle testified that at 1:51 a.m. on April 8, 2017, he interviewed Wells at the Chicago Heights police station. McCorkle observed injuries to the left side of Wells' face. Wells identified Harris and defendant as the men who attacked and robbed him.

¶ 14    On cross-examination, McCorkle testified he received training on how to write police reports. In his report based on Wells' April 8, 2017 statement, McCorkle wrote that Wells said both Harris and defendant requested his phone, the men took $300, and McCorkle did not recall that Wells said either offender choked him or threw him to the ground. On redirect, McCorkle testified that he summarized Wells' account in the police report, and did not record the statement verbatim.

¶ 15    Chicago Heights police detective Ryan Zurisk testified that she was assigned defendant's matter on April 8, 2017, and interviewed Wells regarding the incident on April 11. During the interview, Wells identified defendant and Harris in photographs as his attackers. On cross-examination, Zurisk testified that both officers and detectives are trained on how to write reports. Wells told her that he walked to the police station after the incident, and Harris took his phone while they were inside Geno's.

¶ 16    During closing arguments, the prosecutor referenced that Wells identified defendant and Harris to both McCorkle and Zurisk, and again at trial. Defense counsel argued Wells was not a credible witness because he "was drunk and his story changed significantly." Counsel emphasized that Wells changed his story regarding where the incident occurred, where and who asked for his

phone, how many times he was struck and who struck him, the amount of money taken, and how he arrived at the police station. In rebuttal, the prosecutor stated, "Detective [Zurisk] told you that *** police officers unless they're detectives are not trained on how to write reports." The prosecutor continued, regarding Wells' account of the incident, that he "said the same thing not once, not twice but three times." In response to defense counsel's argument regarding alcohol, the prosecutor stated over objection:

> "[T]his is not a case where the victim is so drunk that he just doesn't know what was going on. Counsel misrepresented some things that the victim said. The victim said *** he was there at 10:00 but he didn't leave at 10:00 am to go get his haircut. He left at 10 or 11:00 p.m. so he was there all day ***. He was alert enough to leave and go get a haircut and come back. There is no evidence in the record that he was so drunk that he just didn't know what was going on."

¶ 17 After closing arguments, the circuit court instructed the jury in relevant part that opening statements and closing arguments are not evidence. The jury found defendant guilty on both counts. At a later proceeding, the court denied defendant's posttrial motion, and the matter moved to sentencing. Following a hearing, the court sentenced defendant to nine years' imprisonment for robbery (720 ILCS 5/18-1(a) (West 2016)) and five years' imprisonment for aggravated battery on a public way (720 ILCS 5/12-3.05(c) (West 2016)), to be served concurrently. The court denied defendant's motion to reconsider sentence. This appeal followed.

¶ 18                                    ANALYSIS

¶ 19 On appeal, defendant first argues that the evidence was insufficient to sustain the verdict because Wells was not a credible witness.

¶ 20    When reviewing the sufficiency of the evidence, this court must construe the evidence in the light most favorable to the State and determine if any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. This court will not substitute its judgment for that of the factfinder on the weight of the evidence or witness credibility. *People v. Hardman*, 2017 IL 121453, ¶ 37. We may not set aside a factfinder's credibility determination unless the testimony is so improbable that no rational factfinder could accept it. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (rejection appropriate only "where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt"). Reversal is only appropriate where the evidence was so unreasonable, improbable, or unsatisfactory that it creates reasonable doubt of the defendant's guilt. *Hardman*, 2017 IL 121453, ¶ 37.

¶ 21    Defendant here does not contend that the State's evidence was insufficient to establish the elements of the charged crimes if the State's witnesses were found to be credible. Instead, he argues that no rational factfinder could have ever credited Wells' testimony because he consumed alcohol on the day of the incident and offered conflicting accounts. We disagree. The jury heard Wells' testimony, McCorkle and Zurisk's testimony that included the contradictory elements of Wells' various accounts, and defense counsel's closing argument, which highlighted Wells' alcohol consumption as well as the inconsistencies in his accounts. After hearing all of this evidence and arguments, the jury chose to favor Wells' testimony as credible, and this court cannot substitute it judgment for that of the jury. *Id.*

¶ 22    Defendant first argues that we can discount the jury's credibility finding because the evidence necessarily implies that Wells was so intoxicated during the incident that his memory is untrustworthy. This argument is unsupported by the record. While Wells admitted that he

7

consumed alcohol on April 7, 2017, there was no evidence that he was actually intoxicated or his memory was impaired. Defendant presented no expert witness on intoxication, nor did his attorney even question McCorkle on whether Wells smelled of alcohol or appeared intoxicated at the police station following the incident. The fact that Wells consumed alcohol does not on its own render his testimony unreliable. See *Gray*, 2017 IL 120958, ¶ 40. The jury heard the evidence regarding Wells' alcohol consumption and made its choice on how this affected his credibility and the weight of his testimony. *Id.* ¶ 47. While the record could support a different inference regarding intoxication than the one the jury drew here, the evidence is not conclusive, and we may not substitute our judgment for that of the factfinder on what reasonable inferences to draw from the evidence. See *People v. Petermon*, 2014 IL App (1st) 113536, ¶ 43.

¶ 23    Defendant's next basis to reject the jury's credibility finding is the discrepancies between Wells' trial testimony, his account to McCorkle, and his account to Zurisk. Defendant claims that Wells was inconsistent about (1) where Harris asked for the phone; (2) whether Harris alone, or both Harris and defendant, requested the phone; (3) how much money the two took from Wells; (4) where the attack occurred; (5) whether Wells was thrown to the ground and choked; (6) whether defendant attacked Wells from behind or the side, and (7) how Wells traveled to the police station.

¶ 24    This argument fails because regardless of these alleged discrepancies, Wells remained consistent on the key operative details: (1) Harris walked away with his phone, (2) Wells pursued, (3) defendant surprised Wells and struck him, (4) defendant and Harris took Wells' money and left, and (5) Wells reported the incident to the police shortly thereafter. Based on these consistent details, a rational factfinder could choose to credit Wells' testimony despite discrepancies elsewhere in his accounts.

¶ 25    Additionally, defendant overstates many of the alleged discrepancies. The testimony regarding whether defendant attacked from the back or the side, and the location of the attack, weas not materially different and not reflective of a change in Wells' story. This is similar to the difference between Wells' testimony that Harris requested the phone just outside of Geno's with Zurisk's testimony that Wells stated Harris made the request inside—Wells was clear in court that the request was made as they exited Geno's, and whether the men were inside or outside of is irrelevant.

¶ 26    Other details, however, are significantly different, such as how Wells arrived at the police station, the amount of money that was taken, and whether Wells was choked and thrown to the ground. These issues, however, are collateral to the elements of the charges.[2] That a witness gave conflicting accounts on collateral matters "need not render the testimony of the witness as to material questions incredible or improbable." See *Gray*, 2017 IL 120958, ¶ 47. Moreover, the factfinder has the ability to decide which portions of a witness' testimony to accept and which to reject without discarding the entirety of the testimony. *Id.* It follows that this is not a scenario where Wells' testimony was so unbelievable that we can disturb the jury's credibility determination on appeal. *Cunningham,* 212 Ill. 2d at 280.

¶ 27    Finally, defendant argues that Wells' identification was unreliable. When assessing the reliability of an identification, a court considers (1) the opportunity of the witness to view the assailant at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the offender, (4) the level of certainty demonstrated by the witness,

---

[2] Here, defendant was convicted of two charges, robbery and aggravated battery on a public way. To establish robbery, the State had to show defendant took property from Wells' person through force or threat of imminent force. 720 ILCS 5/18-1 (West 2016). To establish aggravated battery on a public way, the State had to show defendant made physical contact of an insulting or provoking nature with Wells while on a public way. 720 ILCS 5/12-3.05(c) (West 2016).

and (5) the length of time between the incident and the identification. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). Where a victim is already familiar with his assailant, this fact renders the other factors less relevant. *People v. Brooks*, 187 Ill. 2d 91, 130 (1999).

¶ 28    Wells was familiar with both defendant and Harris before the incident. Moreover, he saw both men earlier that day in Geno's, and there is no indication he did not pay attention to his attackers during the incident. Wells identified his attackers by name with certainty the day of the attack, three days later, and at trial. Thus, every factor weighs in favor of reliability. *Biggers*, 409 U.S. at 199-200. Additionally, as explained above, the jury considered and rejected the argument that Wells' entire testimony, including identification, could be discounted due to alleged inebriation or inconsistencies, and we cannot substitute our judgment on that finding. See *Hardman*, 2017 IL 121453, ¶ 37. It follows that defendant's sufficiency of the evidence claim fails.

¶ 29    Defendant next claims that he deserves a new trial because the circuit court permitted repetitive prior consistent statements of identification in violation of Illinois Rule of Evidence 403 (eff. Jan. 1, 2011). Defendant admits that he did not preserve this claim through a timely objection at trial, but argues we may reach the claim on plain error review.

¶ 30    Plain error review is appropriate where the reviewing court determines that a clear or obvious error occurred at trial, and either (1) the evidence was so closely balanced that the error alone may have tipped the scales of justice, regardless of the seriousness of the error, or (2) the error was so serious that it denied the defendant a fair trial, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48. The defendant must first show that a clear or obvious error occurred. *Id.* ¶ 49. We review *de novo* whether a forfeited claim is reviewable under the plain error doctrine. *People v. Schoonover*, 2021 IL 124832, ¶ 26.

¶ 31    Defendant argues that the admission of prior consistent statements of identification in violation of Rule 403 constituted first-prong plain error. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Ill. R. Evid. 403 (eff. Jan. 1, 2011). A witness's prior consistent statements are admissible for purposes of identification. *People v. Anderson*, 2018 IL App (1st) 150931, ¶ 37.

¶ 32    Here, defendant claims the circuit court erred by admitting multiple prior consistent statements by Wells regarding his identification of defendant. Defendant complains that in addition to Wells' in-court identification, the State introduced the following testimony: (1) Wells testified on direct that he identified defendant by name to McCorkle on August 8, 2017; (2) Wells testified on direct that he identified defendant by name and in a photograph to Zurisk on August 11; (3) Wells testified on redirect he told the police that defendant punched him in the face, which was "exactly" the same thing he said in court; (4) Wells confirmed on redirect that he told McCorkle and Zurisk defendant was one of his attackers; (5) McCorkle testified that Wells identified defendant; (6) Zurisk testified that Wells identified defendant in a photograph. Defendant argues the probative value of these repeated references to the identification was substantially outweighed by the danger the jury would be prejudiced by the repetition, but not specify which instances should not have been admitted.

¶ 33    We find that the circuit court did not commit clear or obvious error in admitting this testimony. Defendant argues that the repetition itself rendered some subset of the testimony inadmissible, but this argument collapses when the individual circumstances of each are examined.

¶ 34    First, Wells' testimony on direct that he identified defendant to McCorkle immediately following the incident, and again to Zurisk three days later, is highly probative on the issue of identification, a purpose for which the law specifically permits prior consistent statements. *Id.*

¶ 35    Next, the record shows that the circuit court did not admit Wells' testimony on redirect regarding identification; defense counsel objected to this line of questioning, and the court ruled, "We went through the identification on direct examination so that's been asked and answered." A jury is presumed to follow the court's instructions regarding objections unless proven otherwise, and defendant makes no such showing here. See *People v. Rudd*, 2020 IL App (1st) 182037, ¶ 85. Defendant also complains that Wells testified on redirect that he told the police defendant punched him, which was consistent with his testimony. This statement, however, was uniquely probative beyond the general identification of defendant because defense counsel challenged Wells' identification testimony on cross-examination specifically regarding which attacker physically contacted Wells, and was thus not cumulative to the more general identification testimony.

¶ 36    Finally, the prosecutor elicited the testimony from McCorkle and Zurisk regarding prior consistent statements of identification only after defense counsel cross-examined Wells, during which he challenged Wells' credibility. In this circumstance, the law permitted the State to support Wells' credibility regarding identification through third-party testimony. See *People v. Shum*, 117 Ill. 2d 317, 342 (1987) (when a witness testifies that he previously identified a defendant and this testimony is tested by cross-examination, "a third person may then testify that he heard or saw the witness identify the offender because both the witness and third person would be subject to cross-examination"). It was also appropriate for McCorkle and Zurisk to testify regarding Wells' identification to describe the circumstances of the identification. *People v. Temple*, 2014 IL App (1st) 111653, ¶ 41 (testimony about the identification process itself are properly admitted as prior consistent statements of identification). The probative value of McCorkle and Zurisk's testimony, in light of defense counsel's strategy to discredit Wells, was strong.

¶ 37    Therefore, we cannot find that defendant has identified any testimony for which the probative value was substantially outweighed by the danger of unfair prejudice, nor that defendant has demonstrated that any of the testimony was so cumulative or unnecessarily repetitive that any portions became more prejudicial than probative by virtue of repetition. Accordingly, the circuit court did not commit a clear or obvious error by admitting the complained-of testimony such that plain error review is appropriate.

¶ 38    Defendant next claims that the prosecutor committed misconduct in three specific ways, only one of which he properly preserved for appeal: that the prosecutor improperly accused defense counsel of misrepresenting testimony by overstating the degree to which the evidence showed Wells was intoxicated. Defendant further argues, in unpreserved claims, that the prosecutor committed misconduct by: (1) referencing the allegedly improper prior consistent statements discussed above during her closing argument, then commenting in rebuttal that Wells repeated the identification, "not once, not twice, but three times"; and (2) misrepresenting Zurisk's testimony about officer training on police reports by stating, "Detective [Zurisk] told you that *** police officers unless they're detectives are not trained on how to write reports." Because defendant did not preserve the claims, they are only potentially reviewable as plain error.

¶ 39    The State is provided considerable latitude during closing arguments. *People v. Hall*, 194 Ill. 2d 305, 346 (2000). The reviewing court must review the argument in its entirety so that the challenged sections can be placed in the appropriate context. *People v. Cisewski*, 118 Ill. 2d 163, 175-76 (1987). Additionally, the reviewing court must presume that the jury followed a trial judge's instructions in reaching the verdict, absent a showing to the contrary. *People v. Simms*, 192 Ill. 2d 348, 373 (2000). One factor courts use to weigh the impact of an improper comment at closing is whether "the comments were brief and isolated in the context of lengthy closing

arguments." *People v. Runge*, 234 Ill. 2d 68, 142 (2009). Improper argument at closing will only constitute reversible error if the comments were "so prejudicial that real justice was denied or the verdict resulted from the error." *People v. Jackson*, 2020 IL 124112, ¶ 83.

¶ 40    The prosecutor's statement that defense counsel misrepresented testimony, was:

> "[T]his is not a case where the victim is so drunk that he just doesn't know what was going on. Counsel misrepresented some things that the victim said. The victim said *** he was there at 10:00 but he didn't leave at 10:00 am to go get his haircut. He left at 10 or 11:00 p.m. so he was there all day ***. He was alert enough to leave and go get a haircut and come back. There is no evidence in the record that he was so drunk that he just didn't know what was going on."

¶ 41    We find the prosecutor did not make an improper statement in this portion of her argument. Instead, it is clear she was simply distinguishing her interpretation of the evidence regarding intoxication from defense counsel's, contending the evidence did not show that Wells was so inebriated he did not understand what was happening, as defense counsel suggested. Additionally, this was a single statement in a full closing and rebuttal, during which the prosecutor did not repeat the statement in an attempt to discredit defense counsel generally, rendering the comment benign. See *Runge*, 234 Ill. 2d at 142. Moreover, the court instructed the jury that neither party's closing argument was evidence, and defendant makes no showing that the jury did not follow this instruction regarding its interpretation of the alcohol consumption evidence. See *Simms*, 192 Ill. 2d at 373. Thus, defendant could not demonstrate reversible error on this point even if we agreed the comment was improper.

¶ 42    Turning to the forfeited claims, we reject defendant's argument that the prosecutor's comments about the prior consistent statements of identification were improper. As described

14

above, the record shows the prior consistent statements of identification were properly admitted into evidence. The prosecutor's references to properly admitted evidence during the closing argument was thus appropriate, particularly in light of defense counsel's efforts to discredit Wells' testimony as unreliable and inconsistent, and the considerable latitude afforded prosecutors at closing. See *Hall*, 194 Ill. 2d at 346.

¶ 43    Regarding his second forfeited contention, however, defendant is accurate that the prosecutor misrepresented the record. Zurisk did not testify that police officers are not trained on how to write reports unless they are detectives, as the prosecutor claimed. We do not believe this misstatement, however, rises to the level of reversible error, let alone plain error. This was an isolated comment based on a tangential issue in the midst of lengthy argument and rebuttal, and the reviewing court must consider the totality of the argument. *Runge*, 234 Ill. 2d at 142. The court instructed the jury that closing arguments are not evidence, and there is no indication from the record that the jury did not follow this instruction and concluded therefrom that McCorkle did not know how to write a police report. See *Simms*, 192 Ill. 2d at 373. It follows that there is no probability this comment tainted the whole trial, or was so central to the jury's credibility determination that the verdict resulted from the error. Accordingly, the claim fails, because without reversible error, there can be no plain error. See *Jackson*, 2020 IL 124112, ¶¶ 87-88 (a prosecutor's "brief and isolated" mischaracterizations of the evidence during closing argument was not so improper or prejudicial to show reversible error, and therefore plain error review was inappropriate).

¶ 44    Finally, defendant argues his counsel was ineffective for "promising" to present evidence that defendant was not present during the incident, but then failing to do so.

¶ 45    To establish an ineffective assistance of counsel claim, a defendant must show that his counsel's conduct was objectively unreasonable, and the unreasonable conduct prejudiced the defendant. *People v. Clendenin*, 238 Ill. 2d 302, 317 (2010). To demonstrate prejudice, the defendant must show that but for counsel's deficient conduct, there is a reasonable probability the result at trial would have been different. *Id.* The defendant must prove both prongs, and the failure to establish one obviates the need for a reviewing court to analyze the other. *Id.* at 317-18.

¶ 46    During his opening statement, defense counsel stated defendant, "has no idea what happened to [Wells] on April 8, 2017, because he wasn't there." Counsel continued that because the State had the burden of proof, defendant did not need to present evidence, and also reminded the jury that defendant had no requirement to testify and the jury could not hold the decision not to testify against him. Defendant presented no evidence at trial.

¶ 47    On this record, we find that, even if we accept that counsel acted unreasonably by making the above statement then not presenting any evidence, defendant cannot establish prejudice. While defendant claims counsel's statement constituted "self-immolation" before the jury, the record does not support this hyperbolic assertion. Defendant fails to demonstrate how the result of the trial likely would have been different had counsel not made this statement. The jury here chose to credit Wells' account of the incident, and it is highly unlikely that defense counsel's single sentence in his opening statement would have impacted that decision one way or another, particularly in the context here where the statement was immediately followed by counsel reminding the jury that defendant had no burden to present evidence, and could choose not to testify. We note that because defendant cannot demonstrate prejudice, we need not determine whether counsel's conduct was objectively unreasonable. *Id.*

¶ 48     Finally, defendant argues in passing that the cumulative impact of these purported errors warrants a new trial. This argument, however, is unavailing because we have rejected each claimed error. See *People v. Perry*, 224 Ill. 2d 312, 356 (2007).

¶ 49                                   CONCLUSION

¶ 50     The evidence was sufficient to sustain the jury's verdict, the circuit court did not commit clear or obvious error respecting the admission of prior consistent statements of identification, and defendant could not establish prosecutorial misconduct or demonstrate his counsel was ineffective. Accordingly, his convictions are affirmed.

¶ 51     Affirmed.