NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 231371-U

NO. 4-23-1371

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MOHAMED A. DIDA, | ) | No. 21CF1216 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Casey Costigan, |
| | ) | Judge Presiding. |

---

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Harris and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding (1) defendant's stipulated bench trial was not tantamount to a guilty plea and, accordingly, the trial court was not required to comply with Illinois Supreme Court Rule 402 (eff. July 1, 2012), personally admonish him about the stipulation agreed to by his counsel, or ask if he personally agreed to the stipulation; (2) the court did not err in (a) denying defendant's request to represent himself or (b) not *sua sponte* ordering a fitness evaluation before sentencing; and (3) the court sufficiently considered defendant's *pro se* claim of ineffective assistance of counsel and did not need to appoint independent counsel for further proceedings pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 2    Following a stipulated bench trial, defendant, Mohamed A. Dida, was found guilty of one count of aggravated stalking (720 ILCS 5/12-7.4(a)(3) (West 2020)) and one count of violating an order of protection (*id.* § 12-3.4(a)(1)). The trial court sentenced defendant to five years in prison. Defendant appeals, asserting multiple errors by the court. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4                    A. Defendant's Charges and Stipulated Bench Trial

¶ 5          On November 17, 2021, the State charged defendant with aggravated stalking (*id.* § 12-7.4(a)(3)), cyberstalking (*id.* § 12-7.5(a)(2)), and violation of an order of protection (*id.* § 12-3.4(a)(1)). On September 6, 2022, defendant's counsel and the State informed the trial court of its intention to have the aggravated stalking and violation of an order of protection counts adjudicated through a stipulated bench trial. The cyberstalking count, and a perjury count in a separate case, were dismissed on motion of the State.

¶ 6          According to the stipulations entered between the State and defendant's counsel, defendant was served with an order of protection in October 2021. Defendant was prohibited from having any contact with his former wife, Shannon S. Defendant had already been ordered to have no contact with Shannon as a condition of his bond in a separate case in McLean County. After their marriage was dissolved in an Islamic divorce, Shannon "was unequivocal" that she no longer wanted to have contact with defendant. In November 2021, Shannon met with Normal Police Department Detective Elizabeth Hedges to report that defendant sent her various messages and images and called her numerous times. Specifically, "[Shannon] would testify that she recognized the messages as coming from the phone number she knows to be associated with [defendant] through prior contacts, and that messages sent through the WhatsApp account were from the account she knew to be associated with him." Shannon also was able to recognize defendant's voice. Additionally, the messages were written in a manner similar to how defendant wrote, containing grammar reflective of English not being the writer's first language, quotations from the Quran, and references to previous experiences the writer and Shannon shared.

¶ 7          According to the stipulations, between October 20, 2021, and November 12, 2021,

defendant made the following contacts with Shannon: 2 missed voice calls, 37 missed video calls, 76 text messages, 16 images (including one of Shannon and her daughter), 8 audio recordings, and 6 videos (of himself). Shannon found these communications disturbing, and they caused her to fear for her and her daughter's safety. Between November 10 and 16, 2021, defendant called Shannon 24 times. Between November 8 and 16, 2021, defendant sent Shannon 79 text messages, including messages containing pictures of her bedroom, "a selfie of himself making a kissing face," and other photographs, which made her feel "violated and threatened."

¶ 8        Regarding the prospective bench trial, the State informed the court its entire case would be by stipulation. Defense counsel indicated they would not present any additional evidence but would not agree the stipulated evidence offered by the State would be sufficient. The court then admonished defendant as to the charges and possible penalties, explaining a bench trial was tantamount to a guilty plea.

¶ 9        After admonishing defendant about the charges and possible penalties, the trial court inquired of him regarding his intention to reject the State's plea offer, which was four years in the Illinois Department of Corrections plus court costs. Defendant expressed his understanding of the offer but rejected it, as he was adamant he would never say he was guilty. Defendant maintained, "I will go to court, plead not guilty." The court noted defendant voluntarily chose to reject the State's offer and desired to proceed with a stipulated bench trial. Defendant agreed.

¶ 10        After finding defendant made a "knowing and voluntarily [*sic*] rejection of the State's final offer in this matter," the trial court stated it reviewed the facts of the stipulations entered into by the State and defendant's counsel. The court confirmed the State was not going to present additional evidence and defendant's counsel was not going to present any.

¶ 11        The trial court told defendant that while it was a "stipulated bench trial," it was

"tantamount to a guilty plea." The court explained defendant's right to plead not guilty and to require the State to prove him guilty beyond a reasonable doubt. The court continued, "And you understand by pleading guilty today—I'm sorry. You understand that by going through this process here today that you are waiving your right to a jury trial?" Defendant answered, "Yes." The court then informed defendant about his right to testify, his right to call witnesses, his right to cross-examine witnesses, and his right to be represented by an attorney. The court then asked, "You understand that you're waiving those rights by going through this process here today?" Defendant answered, "Yes." The court asked, "Has anybody forced you to go through this process here today?" Defendant answered, "No." The court then informed defendant about the potential immigration consequences of a conviction, the possibility of receiving consecutive sentences in the event of a future conviction, and the potential implications of a conviction for employment, housing, and obtaining a driver's license. Defendant stated he understood. The court determined the State proved defendant's guilt beyond a reasonable doubt and, accordingly, found him guilty of aggravated stalking and violation of an order of protection.

¶ 12                              B. The Initial Sentencing Hearing

¶ 13         The trial court began the sentencing hearing on October 25, 2022. Defendant's counsel informed the court that, shortly before the hearing began, defendant expressed his desire to proceed *pro se*. The court confirmed this with defendant. The court told defendant it needed to make sure he understood "the nature of the charges and the possible penalties with regard to the charges" of which it found him guilty. When asked if he understood the nature of, and possible penalties for, the aggravated stalking count, defendant answered, "Yes." When asked if he understood the nature of, and possible penalties for, the violation of an order of protection count, defendant answered, "I understand and I say I'm not guilty." Defendant continued:

"I was sent a document three pages when I was in prison and it says the attorney and the State have agreed, a stipulation. I object that. That is between them. The sentencing is not by the state attorney or my attorney.

And all I was told is based on unconstitutional and all the cases will be dropped when you come to court. Because when I came to court I had 2,000 pages of my side of the story, and I was told don't present it and don't give it because everything had been dropped and just keep quiet.

So I object because of—because I was not admonished."

¶ 14 After the trial court stated it believed defendant was "right here in the courtroom when [it] went over everything with [him] at that point in time," defendant continued:

"I object to the stipulation between the State and the attorney because I was not admonished. When I had the court on August 31st I was not presented in court. I had a court on 6th of September. When I came—I came nobody talked to me. The State suggested something to the attorney, and then the attorney told me information that everything would get dropped so I kept quiet."

¶ 15 The trial court told defendant, after examining its docket entry for the September 6, 2022, hearing, that it found the stipulated evidence to be sufficient to convict him, and while that circumstance "would not require" the admonishments pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), it nevertheless provided them. The court continued: "So now I'm going to go back to my original questions. Do you understand the nature of the allegations that the Court made

a finding of guilt on and the possible penalties with regard to those allegations?" Defendant answered, "No." The court stated, "The Court will find that the defendant does not understand. The Court will not allow counsel to withdraw with the Defendant not being able to understand." Defendant then told the court he said he was not guilty at the September 6 hearing. The court responded it made a finding of guilt based on the stipulations. The court ultimately decided to continue the hearing so it could review the transcript of the September 6 hearing. The court told defendant, "If you understand everything, you're competent to represent yourself then the Court will allow you to go *pro se*."

¶ 16          C. The Continued Sentencing and Initial *Krankel* Hearing

¶ 17          The trial court continued the sentencing hearing on November 10, 2022. The court noted defendant filed a "*pro se* motion to withdraw plea of guilty," which also contained a claim of ineffective assistance of counsel. Defendant stated he wanted to represent himself. The court summarized the nature of, and possible penalties for, the aggravated stalking count, and asked defendant if he had any questions. Defendant answered, "I don't have questions, but I say that I am not guilty. I don't have questions, but I say that I am not guilty." The court asked, "You understand that the Court has already made a finding of guilt. Do you understand that?" Defendant answered, "No, I don't understand that." Defendant continued, "They say that I have been found guilty. I say I am not guilty." The court stated:

> "And I have indicated to you that I have found you guilty.
> And you say that you don't understand that. I don't know what you
> don't understand about that. But based upon that, I am not going to
> allow this proceeding to go forward with you acting *pro se* with that
> lack of understanding that you have been found guilty. And so Mr.

Pioletti is going to stay in and represent you in this case. I am going to deny his request to withdraw. We are going to go forward with the sentencing at this point in time."

¶ 18 The trial court then invited defendant to explain how his attorney rendered ineffective assistance. Defendant stated his attorney told him "the State is dropping the charges." Defendant needed only to come to court and "say yes to the questions that the judge will ask [him]." Defendant did not want to do so, as he had not written Shannon any messages or called her at all during the operation of the order of protection and had "316 written documents" purporting to demonstrate his innocence. Defendant stated he had "three witnesses who were ready to come" testify he did not write any messages or make any calls to Shannon. Defendant's counsel reported calling these witnesses, but a language barrier prevented him and the witnesses from communicating with each other; "so he rubbished the witnesses and he is forcing me into what I don't understand." Defendant concluded by asserting "the information and the guidance" from his attorney "was not up to date."

¶ 19 The trial court invited defendant's counsel to respond. The court described the hearing as "a *Krankel* hearing or initial *Krankel* inquiry" (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), in which defendant could assert a claim of ineffective assistance of counsel, counsel could respond, and the State would not participate. Counsel stated the perjury case and the cyberstalking count in the instant case were dropped as part of a resolution negotiated with the State. There was "no communication" to defendant of the instant case being dropped in its entirety. Counsel stated he told defendant he was "going to be found guilty of these charges" right before the stipulated bench trial. Counsel continued, "I told [defendant] that that is what's going to happen; not that the charges were going to be dropped; that you were going to be found guilty." Counsel then stated he

spoke twice over the phone with one of defendant's witnesses. However, "what he exactly had to offer to our situation was not ever clear to [counsel]." Additionally, counsel and this witness "had a very hard time communicating." During the second phone conversation counsel had with this witness, he "didn't really get very far." As for the other witnesses, counsel said it was "never clear" what they "would have to offer to the facts of this case" and counsel did not communicate with them. Counsel emphasized defendant "had a copy of the stipulations" and "understood what the procedure was going to be."

¶ 20    The trial court found defendant's claim of ineffective assistance of counsel lacked merit, pertained to trial strategy (specifically, regarding which witnesses, if any, counsel would have called), and was conclusory. The court stated defendant understood that while the perjury case was dismissed in its entirety, the instant case was not, and only the cyberstalking count was being dismissed. The court declined to appoint independent counsel to investigate whether defendant's counsel rendered ineffective assistance.

¶ 21    On December 20, 2022, defendant filed a *pro se* "Motion to Withdraw Guilty Plea and Vacate Sentence." On January 9, 2023, the trial court denied defendant's motion, as he never pled guilty.

¶ 22    This appeal followed.

¶ 23                                        II. ANALYSIS

¶ 24    On appeal, defendant asserts the trial court erred in multiple respects. First, defendant argues the court erred by failing to (1) adequately advise him that his stipulated bench trial was tantamount to a guilty plea, (2) substantially comply with Illinois Supreme Court Rule 402 (eff. July 1, 2012), (3) personally admonish him about the stipulation agreed to by defense counsel, and (4) ask him if he personally agreed to the stipulation. Second, defendant argues the

court erred by denying his request to represent himself or, alternatively, by not ordering a fitness evaluation after he stated he did not understand the court found him guilty pursuant to a stipulated bench trial. Finally, defendant argues the court failed to conduct a proper inquiry into his *pro se* claim of ineffective assistance of counsel pursuant to *Krankel*, necessitating a remand for the appointment of new counsel and for further proceedings.

¶ 25                              A. Defendant's Stipulated Bench Trial

¶ 26        Defendant argues that because the State presented its entire case by stipulation and he did not preserve a defense, the trial court needed to substantially comply with Illinois Supreme Court Rule 402 (eff. July 1, 2012), as well as admonish him about the stipulation and ask if he personally agreed with it. The State disagrees, contending the court was not required to provide these admonishments to defendant because he only stipulated to the evidence that was presented and not to its sufficiency to convict him. According to the State, defendant is conflating his stipulated bench trial with those that are tantamount to a guilty plea.

¶ 27        The Appellate Court, Second District, has explained:

"A stipulated bench trial is a legal fiction created solely to give defendants the benefit and convenience of a guilty plea while avoiding the consequences of waiver or forfeiture. [Citation.] In a stipulated bench trial, a defendant enters a plea of not guilty, and a 'trial' is held based on a set of facts agreed to by the parties. Although there is a remote theoretical possibility that the defendant may be acquitted, the reality is that factual guilt is a foregone conclusion." *People v. Gonzalez*, 313 Ill. App. 3d 607, 617 (2000).

¶ 28        In *People v. Campbell*, 208 Ill. 2d 203, 221 (2003), our supreme court held a

defense attorney "may waive [the defendant's] sixth amendment right of confrontation by stipulating to the admission of evidence as long as the defendant does not object to or dissent from his attorney's decision, and where the decision to stipulate is a matter of legitimate trial tactics or prudent trial strategy." However, "[w]here the stipulation includes a statement that the evidence is sufficient to convict the defendant or where the State's entire case is to be presented by stipulation, *** a defendant must be personally admonished about the stipulation and must personally agree to the stipulation." *Id.*; see *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 13 (distinguishing stipulated bench trials where "the defendant stipulates to the State's evidence, not to the legal conclusion to be drawn from that evidence" from those where "the stipulation includes a statement that the evidence is sufficient to convict the defendant," which is "tantamount to a guilty plea regardless of whether a defense was presented or preserved").

¶ 29        In *People v. Rowell*, 229 Ill. 2d 82, 103 (2008), our supreme court endeavored to "clarify" *Campbell*, explaining, "[its] holding in *Campbell* is that admonishments are required when the State's entire case is presented by stipulation *and* the defendant does not present or preserve a defense." (Emphasis in original.) Later, in *People v. Clendenin*, 238 Ill. 2d 302, 321 (2010), our supreme court noted, "*Rowell* *** provided the opportunity *** for us to clarify what it means for a stipulation to be tantamount to a guilty plea." Citing *Campbell* and *Rowell*, the *Clendenin* court summarized that a stipulated bench trial "may be tantamount to a guilty plea in two instances: (1) when the State's entire case is to be presented by stipulation *and* the defendant does not present or preserve a defense; *or* (2) the stipulation includes a statement that the evidence is sufficient to convict the defendant." (Emphases in original.) *Id.* In such cases, the trial court must also admonish the defendant according to Rule 402(a). See *People v. Taylor*, 2018 IL App (2d) 150995, ¶ 7. Specifically, the trial court must substantially comply with, *inter alia*, the

- 10 -

requirement pursuant to Rule 402(a) to make sure the defendant understands

> "(1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; (3) that he has a right to plead not guilty or guilty; and (4) if he pleads guilty, he waives the right to a trial by jury and the right to be confronted with the witnesses against him."
>
> *People v. Haywood*, 2016 IL App (1st) 133201, ¶ 36.

"Whether a stipulated bench trial was tantamount to a guilty plea is a question of law, which this court reviews *de novo*." *People v. Foote*, 389 Ill. App. 3d 888, 893 (2009).

¶ 30 At the outset, we note defendant did not object to the stipulation offered on his behalf by his attorney at the stipulated bench trial. See *Campbell*, 208 Ill. 2d at 221. While defendant stated at the initial sentencing hearing, "I object to the stipulation," the record reflects that at the stipulated bench trial, the trial court asked him, "And so with regard to that offer you've voluntarily chosen to reject that offer and proceed forward with the stipulated bench trial; is that right?" to which he answered, "Yes." Additionally, we note defendant did not stipulate to the sufficiency of the evidence to convict him. When asked by the court if the stipulation was to the sufficiency of the evidence for a conviction, defendant's counsel answered, "Well, we're not explicitly agreeing that the evidence would be sufficient, but we're not presenting any further evidence." As for the other circumstance in which a stipulated bench trial is tantamount to a guilty plea, the State's entire case *was* presented by stipulation, but defendant *did* express having a defense. Defendant insisted multiple times, during the stipulated bench trial hearing as well as the initial and continued sentencing hearings, that he was "not guilty." Specifically, defendant denied making any calls or sending any messages to Shannon *and* claimed to have three witnesses and over 300 pages of documents purporting to exonerate him of any of the wrongdoing reflected in

the stipulations (and 2,000 pages more generally reflecting his "side of the story.")

¶ 31    In his reply brief, defendant argues such representations before the trial court were not sufficient to "preserve a defense" in this context. In particular, "while [defendant] could claim innocence and contest one of more of the stipulated facts, this does not preserve a genuine defense to the charged counts as defense counsel signed a written stipulation agreeing to the presence of facts that [defendant] personally denied." In support of this proposition, defendant cites the decision of the Appellate Court, First District, in *People v. Russ*, 31 Ill. App. 3d 385 (1975). In *Russ*, the court noted that when "the stipulation might encompass all the essential facts of the State's case-in-chief and the 'defense' might consist solely of defendant's testimony purporting simply to deny one or more of the stipulated facts," then "the reality of the situation is that the defendant has interposed no genuine defense whatever and there actually is no issue of guilt or innocence for the trial judge to determine; hence, despite the purported defense, the stipulation is tantamount to the entry of a plea of guilty." *Id.* at 389. By contrast, in a stipulated bench trial where

> "there is presented a genuine defense with testimony in support thereof introduced by way of stipulation or otherwise (which testimony does not consist of a mere denial of facts in the State's case-in-chief, to which facts defendant had already stipulated), the proceeding is not tantamount to the entry of a plea of guilty to any offense and no compliance with Supreme Court Rule 402 is called for." *Id.* at 392.

¶ 32    We note *Russ* is not a supreme court decision, but an appellate court decision. Moreover, it significantly precedes *Campbell*, *Rowell*, and *Clendenin*. Nevertheless, our supreme court addressed *Russ* in *People v. Galarza*, 2023 IL 127678, which, we note, is the only post-

*Campbell* decision by the supreme court even citing *Russ*. The defendant in *Galarza* (like defendant in the instant case) cited *Russ* to support the proposition that "because his defense was only the denial of the very facts to which he stipulated, his bench trial was tantamount to a guilty plea." *Id.* ¶ 49 ("In *Russ*, the appellate court explained that merely denying stipulated facts, without more, cannot constitute a meaningful defense in the context of a stipulated bench trial."). The supreme court concluded the defendant "did more than deny stipulated facts, he presented a defense." *Id.* ¶ 51. By asserting he was not the driver of the vehicle at the time of the accident at issue and affirmatively claiming someone else was, the defendant in *Galarza* "challenged the sufficiency of the evidence" in a way that "presented a genuine question of fact for the trial court to decide." *Id.* Therefore, the defendant's stipulated bench trial was not tantamount to a guilty plea, and compliance with Rule 402 was not necessary. *Id.* ¶ 52.

¶ 33    The same outcome is warranted here, and for the same reason. Defendant repeatedly asserted he was "not guilty," but his "defense" was *not* limited to a bare denial of the facts to which he stipulated. Rather, defendant stated he had never made any calls or sent any messages to Shannon during the operation of the order of protection *and* had available three witnesses and at least 300 pages of documentation purporting to support his claim of innocence. As defendant did not merely deny stipulated facts, but "challenged the sufficiency of the evidence" so as to create "a genuine question of fact for the trial court to decide," he preserved a defense for purposes of the inquiry into whether his stipulated bench trial was tantamount to a guilty plea. *Id.* ¶ 51. Defendant's trial did not bear *both* characteristics of a stipulated bench trial tantamount to a guilty plea, namely the State presenting its entire case by stipulation *and* defendant not presenting or preserving a defense. See *Clendenin*, 238 Ill. 2d at 321 (citing *Campbell* and *Rowell* in noting "the test is conjunctive, requiring *both* elements to be present before admonishments and a personal

waiver are required" (emphasis in original)). Defendant's stipulated bench trial was not tantamount to a plea of guilty. Accordingly, contrary to defendant's position, the trial court was not required to admonish him pursuant to Rule 402 (though, as the State points out, the court did so anyway "in an abundance of caution") or to personally admonish him of the stipulation and determine if he personally agreed with it.

¶ 34                             B. The Trial Court Did Not Err by Denying

Defendant's Request to Represent Himself

¶ 35          Next, defendant argues the trial court erred by denying his request to represent himself. Defendant asserts the court denied his request to represent himself because it "interpreted [his] continued protestations of innocence as an inability to understand the nature of the proceedings," while understanding that the court found him guilty is not a condition of his right of self-representation. In response, the State contends the court properly denied defendant's request since he expressed not understanding "a topic necessary for self-representation" under the pertinent legal standards. In his reply brief, defendant contends that rather than an inability to understand what had taken place, the record reflects his "frustration with the legal process" and confusion as to "how counsel could stipulate to elements of the offense that he contested."

¶ 36          "Both the Federal and State Constitutions grant to an accused the right of self-representation in criminal proceedings." *People v. Gibson*, 136 Ill. 2d 362, 374 (1990). As our supreme court has said, "The constitution does not force a lawyer upon a defendant. He may waive his constitutional right to counsel if he knows what he is doing and his choice is made with his eyes open." *People v. Nelson*, 47 Ill. 2d 570, 574 (1971). Specifically, the trial court "shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first *** determining that he understands," *inter alia*, "the nature of the charge" and the "minimum

and maximum sentence prescribed by law." Ill. S. Ct. R. 401(a)(1)-(2) (eff. July 1, 1984).

¶ 37 This court has identified "only three possible grounds for denying a defendant's request to proceed *pro se*." *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 24. As pertinent to this appeal:

> " 'Third, defendant's request for self-representation may be denied
>
> when, despite the [trial] court's efforts to explain the consequences
>
> of waiver, the court finds the defendant is unable to reach the level
>
> of appreciation needed for a knowing and intelligent waiver.' " *Id.*

"On review, the trial court's decision on a defendant's election to represent himself will be reversed only if the court abused its discretion." *People v. Hunt*, 2016 IL App (1st) 132979, ¶ 16. "An abuse of discretion will be found only when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hood*, 2022 IL App (4th) 200260, ¶ 86.

¶ 38 We conclude the trial court did not abuse its discretion in denying defendant's request to represent himself. During the initial sentencing hearing, the court asked defendant, "Do you understand the nature of the allegations that the Court made a finding of guilt on and the possible penalties with regard to those allegations?" Defendant answered, "No." Due to defendant's expressed lack of understanding, the court did not allow him to represent himself. At the continued sentencing hearing, after protesting that he was not guilty, the court asked, "You understand that the Court has already made a finding of guilt. Do you understand that?" Defendant answered, "No, I don't understand that." Consequently, the court again denied defendant's request to represent himself. Defendant's apparent inability at his sentencing hearings to understand the nature of the allegations, the possible penalties, and the fact that the court had found him guilty at

a prior proceeding bears upon his ability to understand "the nature of the charge" and "minimum and maximum sentence prescribed by law" as a condition of allowing him to represent himself, and " 'the level of appreciation needed for a knowing and intelligent waiver.' " *Woodson*, 2011 IL App (4th) 100223, ¶ 24. The court's denial of defendant's request to represent himself was not an abuse of discretion, as it was not arbitrary, fanciful, unreasonable, or something with which no reasonable person would agree. *Hood*, 2022 IL App (4th) 200260, ¶ 86.

¶ 39          C. Whether Trial Court Erred by Not Requiring a Fitness Evaluation

¶ 40          As an alternative basis for remanding this matter, defendant argues "if the [trial] court truly believed [he] was incapable of representing himself because he did not understand the proceedings, the court should have ordered a fitness evaluation" before sentencing him. In response, the State contends defendant's expressed lack of understanding of the trial court finding him guilty through a stipulated bench trial does not equate to concern over his fitness to be sentenced. The State also refers to the court's unprompted statements regarding its observations of defendant being fit during prior hearings as far back as January 2022, his consistently appropriate behavior in court, his numerous *pro se* filings with the court, and his educational background, on which he expounded at his sentencing hearing, as additional indications of his fitness. In his reply brief, defendant asserts the court found he was unable to understand " 'because of his mental or physical condition,' " thereby necessitating a fitness evaluation before sentencing.

¶ 41          This court has summarized:

          "The due-process clause of the United States Constitution
          (U.S. const., amend. XIV) prohibits the conviction and sentencing
          of a person who is incompetent to stand trial. [Citations.] Illinois'
          statutory scheme has been held to adequately protect a defendant's

- 16 -

due-process right to be prosecuted only when fit to stand trial. [Citation.] A defendant is presumed to be fit to stand trial, plead guilty, and be sentenced. [Citation.] When a *bona fide* doubt of the defendant's fitness exists, the trial court must order a fitness hearing so that the question of fitness may be resolved before the matter proceeds any further. A defendant is fit to plead guilty, stand trial, or be sentenced if he is able to understand the nature and purpose of the proceedings against him or to assist in his defense." *People v. Williams*, 364 Ill. App. 3d 1017, 1023 (2006).

¶ 42    With regard to whether the requisite *bona fide* doubt of a defendant's fitness exists, this court has explained:

"A *bona fide* doubt exists when the facts raise a real, substantial, and legitimate doubt regarding a defendant's mental capacity to meaningfully participate in his defense. [Citation.] Relevant factors that the trial court may consider in assessing whether a *bona fide* doubt exists include (1) the defendant's behavior and demeanor, (2) prior medical opinions regarding the defendant's competence, and (3) defense counsel's representations about the defendant's competence. [Citation.] If the trial court concludes that no *bona fide* doubt exists, then it need not conduct a fitness hearing. [Citation.] Whether a *bona fide* doubt exists is an objective and fact-specific inquiry left to the discretion of the trial court." *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 54.

"Whether a *bona fide* doubt exists is a question reviewed for abuse of discretion." *People v. Weeks*, 393 Ill. App. 3d 1004, 1009 (2009).

¶ 43　　　　We conclude the trial court did not abuse its discretion by not *sua sponte* ordering a fitness evaluation for defendant due solely to his expressed lack of understanding of the court's finding of guilt at the stipulated bench trial. First, we disagree with defendant's contention that the court found he could not understand the finding of guilt because of his mental or physical condition. The page of the record defendant cites in support of this proposition reflects the court merely stating, at the initial sentencing hearing, "The Court will find that the defendant does not understand. The Court will not allow counsel to withdraw with the Defendant not being able to understand." The court did not find defendant was inhibited from understanding because of his mental or physical condition. Neither, for that matter, did the court so qualify its determination at the *continued* sentencing hearing that defendant could not understand. Furthermore, the record of the stipulated bench trial and the initial and continued sentencing hearings, particularly the excerpts quoted above, reflects defendant behaved appropriately throughout and did not exhibit any indications of compromised fitness. It is clear from a review of the record of the initial and continued sentencing hearings that defendant grounds his professed lack of understanding of the finding of guilt on his fervent belief in his innocence—nothing more. We agree with the State's description: "Under this record, defendant has failed to establish not only an actual inability to understand the proceedings against him, but more fundamentally, he has failed to establish any circumstance even raising the appearance of a *bona fide* doubt as to [his] fitness." Accordingly, we conclude the court did not abuse its discretion in not *sua sponte* ordering a fitness evaluation before sentencing defendant based merely on his expressed lack of understanding of the previous finding of guilt, as its failure to do so under these circumstances was not arbitrary, fanciful,

unreasonable, or something with which no reasonable person would agree. *Hood*, 2022 IL App (4th) 200260, ¶ 86.

¶ 44                    D. Ineffective Assistance of Counsel Claim

¶ 45        Finally, defendant argues the trial court erred in rejecting his claim of ineffective assistance of counsel. Defendant asserts his counsel's approval of the stipulations despite defendant's disagreement with their factual contents and counsel's failure to speak with witnesses who purportedly would clear him of any wrongdoing constitutes "a sufficient factual basis to demonstrate possible neglect of his case." Defendant contends this case should be remanded for the appointment of new counsel and a hearing on the claim of ineffective assistance of counsel. In response, the State contends the court was not required to appoint counsel to investigate defendant's "patently meritless claim" given the "comprehensive evidence showing dozens and dozens of harassing, upsetting communications from defendant which violated an order of protection." In his reply brief, defendant asserts counsel did not "conduct a reasonable investigation into the nature of the evidence that [his] witnesses could offer" and "the absence of that information is the result of the court not adequately conducting the preliminary *Krankel* inquiry."

¶ 46        Our supreme court established a procedure to be followed by trial courts when assessing a defendant's *pro se* claim of ineffective assistance of counsel in *Krankel*. Through later decisions expounding on *Krankel*, the supreme court emphasized new counsel is not automatically required every time a defendant raises a *pro se* claim of ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). If the court, after examining the factual basis of the claim, determines it lacks merit or pertains only to matters of trial strategy, the court may deny the motion without having to first appoint new counsel. *Id.* at 78. But the court should appoint new counsel

for a hearing on the claim if the allegations show possible neglect. *Id.* As the supreme court has also noted:

> "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. [Citation.] During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 78-79.

¶ 47    The supreme court has emphasized the importance of keeping preliminary *Krankel* inquiries free from improper involvement by the State:

> "[A] preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding. Because a defendant is not appointed new counsel at the preliminary *Krankel* inquiry, it is critical that the State's participation at that proceeding, if any, be *de minimis*.

Certainly, the State should never be permitted to take an adversarial

role against a *pro se* defendant at the preliminary *Krankel* inquiry."

*People v. Jolly*, 2014 IL 117142, ¶ 38.

¶ 48        "A claim lacks merit if it is conclusory, misleading, or legally immaterial or does

not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." *People

v. McLaurin*, 2012 IL App (1st) 102943, ¶ 40. An assessment of whether a *pro se* claim of

ineffective assistance of counsel lacks merit entails a "case-by-case, fact-specific examination

driven by the record." *People v. Roddis*, 2020 IL 124352, ¶ 64. As for the standard of review:

"Whether the trial court properly conducted a *Krankel* preliminary

inquiry presents a legal question that we review *de novo*. [Citations.]

However, if the trial court has properly conducted a *Krankel* inquiry

and has reached a determination on the merits of the defendant's

*Krankel* motion, we will reverse only if the trial court's action was

manifestly erroneous. [Citations.] Manifest error is error that is

clearly evident, plain, and indisputable." *People v. Jackson*, 2020 IL

124112, ¶ 98.

¶ 49        Here, the trial court's inquiry into defendant's *pro se* claim of ineffective assistance

of counsel comported with the *Krankel* procedure summarized in *Moore*. The court, through an

exchange with defendant, allowed him to explain how he felt his counsel rendered ineffective

assistance and examined the factual bases for that claim. *Moore*, 207 Ill. 2d at 77-79. The court

then engaged in an "interchange" with "trial counsel regarding the facts and circumstances

surrounding the allegedly ineffective representation." *Id.* at 78. The court also made sure to prevent

the State from being involved in this inquiry. (Before hearing defendant's counsel's response to

defendant's claim, the court said, "The State will not participate in this hearing.") See *Jolly*, 2014 IL 117142, ¶ 38.

¶ 50 On its merits, the trial court's decision not to appoint independent counsel for further proceedings was not manifestly erroneous. The court concluded defendant's claim of ineffective assistance of counsel was meritless, conclusory, and pertained to matters of trial strategy. *Moore*, 207 Ill. 2d at 78. Given the evidence, underpinning the stipulations, of defendant's voluminous, inappropriate, and legally prohibited communications with Shannon, spanning nearly an entire month, we agree that his *pro se* claim of ineffective assistance of counsel did not constitute a colorable claim and was, therefore, meritless. See *McLaurin*, 2012 IL App (1st) 102943, ¶ 40. Defendant's claim also was entirely conclusory, as he did not explain what his three witnesses and/or 300-plus pages of documentation could possibly have offered to exonerate him of improperly communicating with Shannon during the operation of an order of protection at all, let alone the dozens of times the stipulations reflect he did so. See *People v. Towns*, 174 Ill. 2d 453, 467 (1996) (concluding the defendant's claim his counsel should have investigated potential witnesses was conclusory when the defendant "offered neither the circuit court nor [the supreme] court any explanation as to what or to whom he is referring" and did not "set forth the nature of the exculpatory information his counsel should have discovered").

¶ 51 Moreover, "decisions concerning whether to call certain witnesses on a defendant's behalf are matters of trial strategy, reserved to the discretion of trial counsel." *People v. Enis*, 194 Ill. 2d 361, 378 (2000). The Second District has acknowledged "defense counsel can be deemed ineffective for failure to present exculpatory evidence of which he or she is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense." *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82 (citing *People v. Bryant*, 391 Ill. App. 3d 228,

238 (2009)). However, it has also acknowledged "[a] defendant can overcome the strong presumption that defense counsel's choice of strategy was sound if his or her decision appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *Id.* Here, while defendant asserts his counsel should have more adequately pursued three witnesses who could supposedly testify he did not send any messages or make any calls to Shannon, the stipulations reflect defendant placed 2 voice calls and 37 video calls and sent 76 text messages, 16 images (including one of Shannon and her daughter), 8 audio recordings, and 6 videos of himself to Shannon between October 20 and November 12, 2021, called her 24 times between November 10 and 16, 2021, and sent 79 text messages, including messages containing pictures of her bedroom, between November 8 and 16, 2021. The stipulations also reflect these messages were written in a manner similar to how defendant has written, containing grammar reflective of English not being the writer's first language, quotations from the Quran, and references to previous experiences the writer and Shannon shared. Thus, this court cannot say defendant's counsel's decision to not pursue the witnesses any further than he did is somehow "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *Id.*

¶ 52    In sum, the trial court's inquiry into defendant's *pro se* claim of ineffective assistance of counsel comported with the *Krankel* procedure, and its determination that his *pro se* claim of ineffective assistance of counsel was meritless, conclusory, and pertained to matters of trial strategy was not manifestly erroneous, as it was not the product of clearly evident, plain, and indisputable error. Therefore, this court declines to remand this matter for the appointment of independent counsel and further *Krankel* proceedings.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.